KILLINGSWORTH et al. v. REMBERT NAT. BANK OF LONGVIEW et al.

No. 1218—5574.

Commission of Appeals of Texas, Section B. Nov. 26, 1930.

J. H. T. Bibb and Scott, Casey & Hall, all of Marshall, for plaintiffs in error.

Young & Stinchcomb and Croft Shoults, all of Longview, and Beard & Abney and Hobart Key, all of Marshall, for defendants in error.

## RYAN, J.

Plaintiffs in error, the two daughters and granddaughter of Ike Killingsworth, deceased, brought this suit against the defendants in error to compel the Rembert National Bank of Longview, a creditor of said deceased, to resort to other securities held by the bank before applying to its indebtedness the proceeds of certain insurance policies in which it was named "beneficiary" as interest may appear.

There was judgment for defendants in the trial court, which was affirmed by the Court of Civil Appeals. 19 S.W.(2d) 802.

Ike Killingsworth died testate on December 6, 1928, leaving surviving him his wife, Ethel Killingsworth, two married daughters, Pearlie May Burns and Hazel Latham, and one granddaughter, Ida Jewell Killingsworth.

By his will dated June 13, 1928, duly probated, Killingsworth bequeathed to his two daughters jointly, 200 acres of land, to the granddaughter, 81 acres of land, and to the wife all the remaining land owned by him; all said bequests were to said devisees in their own rights and "free from all claims." To the wife was also bequeathed "in her own right" all the personal property "after my debts against same are paid." The will then continues: "And also any other amounts or notes unsecured which I may then owe are to be paid, out of crops and stock; also it is my will that Mrs. Ethel Killingsworth

shall have, free of all claims, all household goods and furniture."

At the time of his death Killingsworth owed various creditors, sums in excess, in the aggregate, of the value of the property he owned; among others, he owed the Rembert National Bank more than $16,000, secured by mortgages he had given on certain of his real and personal property.

On March 22, 1928, Ike Killingsworth was the insured and his wife the beneficiary under two life insurance policies issued by the Great Southern Life Insurance Company; under an unrestricted right to change the beneficiaries from time to time, given him under the terms of both policies, he, on that date, directed the insurance company to change the beneficiaries by writing a letter to the company relative to each policy, identical in terms except as to the policy numbers, as follows:

"This is your authority to change the beneficiary under the above numbered policy to the Rembert National Bank of Longview, Texas, as interest may appear, then the remainder, if any, to Ida Jewell Killingsworth, granddaughter; Mrs. Pearl Burns, daughter, and Mrs. Hazel Latham, daughter, share and share alike."

The insurance company received both letters, and made the following indorsement on each policy, viz.:

"The beneficiary under this policy has this day been changed from Ethel V. Killingsworth (wife) to Rembert National Bank, Longview, Texas (creditor) as their interest may appear and the balance, if any, to Ida Jewell Killingsworth (granddaughter), Pearl Burns (daughter) and Hazel Latham (daughter) share and share alike, survivors or survivor."

One indorsement was so made by the company on March 23, 1928, and the other on April 2, 1928.

On the trial, W. B. Smith was permitted to testify to conversations and statements made by Killingsworth at the time, and while the change of beneficiaries was being made in the two policies, as to his purpose in making such changes, viz., that he wanted this particular insurance payable to the bank and the land "cleared for his folks from the bank's claims."

This action of the trial court was complained of on the ground that the letters and indorsements on the policies are written instruments constituting a contract, without ambiguity, and therefore parol evidence was not admissible to vary, contradict, or add to the terms of such written contract—and is the basis of the first assignment of error here.

The second assignment of error complains of the trial court's finding of fact that it was Killingsworth's intention, when he executed the instruments changing the beneficiaries in the policies, that the proceeds of the insurance should be applied to the bank's indebtedness before any part thereof should be paid to the plaintiffs.

The third assignment of error is that the Court of Civil Appeals erred in not holding that the bank should first resort to the mortgaged personal and real property before applying the proceeds of the insurance policies (which in the meantime had been collected by it from the insurance company less certain indebtedness of the insured to the company) to its claims.

■ We have reached the conclusion that the doctrine of marshaling assets and securities is not available to plaintiffs in error, who were not creditors of Ike Killingsworth; they paid nothing of value, and have no vested interest in the insurance superior to the bank's claim. The very policy under which they claim gives them only the balance, if any, after the creditor bank's debt is paid. The language used in the letter from Killingsworth to the company, and in the company's indorsements changing beneficiaries, clearly expresses the intention of both parties to apply the proceeds of the insurance to the bank's debt, and give plaintiffs in error only what might remain after the bank's claim is satisfied.

■■ If one party has a lien on or interest in two funds for a debt, and another party has a lien on or interest in only one of those funds for another debt, the latter may have a right in equity to compel the former to resort to the other fund in the first instance, for satisfaction, but the rule applies only if that course is necessary for the satisfaction of the claims of both parties, and does not trench upon the rights or operate to the prejudice or delay of the party entitled to the double fund.

That is the doctrine of marshaling assets and securities. 38 C. J. 1365; 18 R. C. L. 454. It presupposes a claim or interest. Here, the plaintiffs in error have no claim as creditors in the insurance policies, and no interest therein except as it might be given them under the terms of the policies, which limit their recovery to the conditional situation that the bank's claim should first be paid out of the proceeds. They could have no interest in the policies, and the policies could never become their property until the bank's claim is first satisfied. Andrews v. Union Cent. Life Insurance Co., 92 Tex. 584, 50 S. W. 572; Harde v. Life Insurance Co. (Tex. Civ. App.) 153 S. W. 666; Andrews v. Union Cent. Life Insurance Co., 24 Tex. Civ. App. 425, 58 S. W. 1039 (writ of error refused).

Farracy v. Perry (Tex. Civ. App.) 12 S.W. (2d) 651, cited by plaintiffs in error, is not inconsistent with the above. There the policies were payable to the wife as beneficiary, and she and her husband (the insured) assigned the policies as collateral security to a creditor. No change was made in the beneficiary named in the policy, and the Court of Civil Appeals held the assignment to the creditor not equivalent to his designation of another beneficiary. Here the bank was named beneficiary, and on Killingsworth's death had the right to collect the policy and pay itself out of the proceeds, accounting to plaintiffs in error only for the excess, if any. In the Farracy v. Perry Case, the beneficiary widow had a vested right to the entire proceeds, subject only to the rights of the bank as creditor, which held only a lien on the policies; here the plaintiffs in error are entitled to none of the proceeds until after the bank is paid.

■ The testimony of W. B. Smith to the purpose of the deceased in changing beneficiaries in the policies was unnecessary, in view of the plain and unambiguous written changes, evidenced by the deceased's letters to the company and the company's written indorsements on the policies. If the testimony had been excluded, the trial court could not have correctly reached a conclusion different from the one he did reach.

We therefore recommend that the judgments of the Court of Civil Appeals and the trial court be affirmed.

CURETON, C. J.

The judgments of the district court and Court of Civil Appeals are both affirmed, as recommended by the Commission of Appeals.