## SECOND NAT. BANK OF HOUSTON et al.
### v. DUNN et al.
### No. 10081.

Court of Civil Appeals of Texas. Galveston.
May 30, 1935.

Dissenting Opinion June 11, 1935.

Rehearing Denied July 9, 1935.

Baker, Botts, Andrews & Wharton, of Houston (Palmer Hutcheson and John T. Maginnis, both of Houston, of counsel), for appellants.

Fulbright, Crooker & Freeman and Vinson, Elkins, Sweeton & Weems, all of Houston (Clyde A. Sweeton, John H. Crooker, David T. Searls, and Leon Jaworski, all of Houston, of counsel), for appellees.

GRAVES, Justice.

This, as merely a general statement of the nature and result of the suit below that is thought to be correct, is taken from the brief filed here for the appellants:

"Second National Bank of Houston, Texas, and Carrie B. Carter, as Independent Co-Executors and Co-Trustees of the Estate of S. F. Carter, Sr., deceased, and said Bank as Trustee for Carrie B. Carter, and Carrie B. Carter, individually, sued the defendants, T. C. Dunn, Jr., and L. J. Walling, upon three certain notes executed by Houston Development Company, endorsed by said Dunn and Walling, and also by S.

F. Carter, Jr., (son of S. F. Carter, Sr., and Carrie B. Carter), whose estate was also made a party defendant.

"The suit was brought in the district court of Harris County to recover on those notes, aggregating the principal sum of $162,213.74, together with interest and attorneys' fees provided for therein, and also to recover on a general guaranty agreement dated January 12, 1928, executed by Dunn and Walling and Carter, Jr., in favor of Carter, Sr., expressly guaranteeing the payment by Houston Development Company of all of its aforesaid indebtedness up to the sum of $100,000.00. The Houston Development Company was not made a party to the suit, because it was actually and notoriously insolvent.

"The notes mentioned above, executed by the Houston Development Company, and endorsed by Carter, Jr., Walling and Dunn, were as follows:

"(1) Note for $98,513.50, upon which there was a credit of $1,299.76, leaving a balance of $97,213.74, dated August 31, 1928, payable to the order of Second National Bank of Houston, and transferred to the estate of Carter, Sr.

"(2) Note for the sum of $35,000.00, dated June 20, 1928, payable to the order of South Texas Commercial National Bank of Houston, Texas, and transferred to the estate of Carter, Sr.

"(3) Note for the sum of $30,000.00, dated July 18, 1928, payable to the order of the First National Bank of Houston, Texas, and transferred to the estate of Carter, Sr.

"The payment of the indebtedness to the Houston Development Company to each of the aforesaid banks had been guaranteed by Carter, Sr., by separate general guaranty agreements executed by him, during the lifetime of both Carters, as follows:

"(1) General guaranty agreement dated October 20, 1927, guaranteeing the payment of all indebtedness of the Houston Development Company to the Second National Bank of Houston then or thereafter owing up to the sum of $100,000.00.

"(2) General guaranty agreement dated October 22, 1924, guaranteeing the payment of all indebtedness of the Houston Development Company to the South Texas Commercial National Bank of Houston, then or thereafter owing, up to the sum of $40,-000.00.

"(3) General guaranty agreement dated January 19, 1927, guaranteeing the payment of all indebtedness of Houston Development Company to First National Bank of Houston, Texas, then and thereafter owing, up to the sum of $30,000.00.

"Upon the failure of the defendants Dunn and Walling to pay said notes to the banks, it became necessary for plaintiffs as executors of the estate of Carter, Sr., to pay the same to said banks by reason of said guaranties, and each and all of said banks duly assigned, transferred, endorsed and delivered said notes to the estate of Carter, Sr. Plaintiffs then (three and one-half years after the collection by the plaintiff-bank of the $200,000.00 of the two insurance policies described infra) brought this suit against the defendants.

"The defendants Dunn and Walling set up as a defense in their answers that Carter, Jr., after the death of his father, S. F. Carter, Sr., took out two insurance policies on May 7, 1928, with the Aetna Life Insurance Company, in the sum of $170,-000.00 and $30,000.00, respectively, payable to the executors and trustees of the estate of Carter, Sr., deceased. They allege that such policies were taken out for the benefit of the Houston Development Company, and for the purpose of protecting them as endorsers on the notes sued upon in the event of the death of Carter, Jr., and that after said policies of insurance were bought the Second National Bank of Houston, acting as executor and trustee of the said S. F. Carter, Sr., deceased, was notified by Carter, Jr., Dunn and Walling that it was the purpose and intention of Carter, Jr., in procuring the policies to protect the Houston Development Company and the defendants Dunn and Walling as endorsers on said notes against liability therefor in the event of the death of Carter, Jr., and that the bank, acting in the aforesaid capacity, consented and agreed to apply the proceeds of said policies to the discharge of said obligations. They also allege that the premiums on said policies, or the greater part thereof, were paid by the Houston Development Company. The defendants Dunn and Walling further allege that the notes sued on were actually paid and discharged out of the proceeds of the insurance policies which were collected by the banks upon the death of Carter, Jr., and that if the notes sued upon herein were not actually discharged at that time, that they should

be so discharged by an application of such insurance proceeds. They further ask for recovery against the plaintiffs for any amount the plaintiffs recover against them.

"The plaintiffs filed a supplemental petition in reply to the answers of the defendants Dunn and Walling, setting up general and special demurrers and a general denial to their answers, and alleged that the aforesaid insurance policies were issued and delivered to the executors and trustees of the estate of Carter, Sr., deceased, for the purpose of securing that estate against loss on obligations executed in favor of his father by Carter, Jr., and on obligations upon which Carter, Jr., was liable as maker or endorser, or otherwise, in favor of Carter, Sr., or in favor of third parties to whom Carter, Sr., was liable by guaranty or endorsement of said obligations. Plaintiffs further alleged that they, as executors and trustees of the estate of Carter, Sr., collected the proceeds of said policies upon the death of Carter, Jr., and applied them to the discharge of obligations of the nature above mentioned, other than those sued upon. They further alleged that such application of the insurance proceeds was made in good faith and without notice of any claim or understanding that such proceeds were to be applied on the obligations sued upon, and alleged that the defendants, Dunn and Walling, waived any rights which they had in the proceeds and were estopped to assert any claims or rights to the proceeds of such policies, and to set up such defense to this suit, and that the agreement and understanding alleged by the defendants Dunn and Walling relative to the purpose of taking out of said insurance policies and the application of the proceeds thereof constituted an effort to vary the written contracts of insurance by parol, and were not in anywise binding on the plaintiffs.

"The answer filed in behalf of the estate of Carter, Jr., deceased, consisted of a general demurrer to plaintiffs' petition, and to the answers of the defendants Dunn and Walling in so far as they sought indemnity or contribution against the estate of Carter, Jr., deceased, a general denial, and then by way of cross-action against the defendants T. C. Dunn and L. J. Walling, it adopted the allegations of the plaintiffs' amended supplemental petition and asked that if plaintiffs should recover any sum against it that it be given a judgment over against the defendants Dunn and Walling, for indemnity or in the alternative for contribution.

"Mrs. Carrie Carter, individually, dismissed her asserted cause of action during the progress of the trial.

"The case was submitted to a jury on special issues, and the findings thereon are in substance as follows:

"Issue I: That in the procuring of the insurance policies Carter, Jr., had the purpose and intention of protecting the Carter, Sr., estate and Dunn and Walling against the payment of the obligations sued upon in the event of the death of Carter, Jr.

"Issues Ia and Ic: That after Carter, Jr., secured the Aetna insurance policies, he did not notify the Second National Bank of this purpose and intention in securing the policies. That the Second National Bank, as executor and trustee of the estate of Carter, Sr., had no notice from any source before the application of the proceeds of the policies, that it was the intention of Carter, Jr., to have the proceeds applied to the payment of the obligation sued on.

"Issue II: That the Second National Bank did not agree with Dunn and Walling that the bank would collect the proceeds of said insurance policies and apply the same to the payment of the obligations sued upon herein.

"Issue III: That the Second National Bank, after it collected the proceeds of the insurance policies, did not apply the proceeds thereof to the payment of the obligations sued on.'

"Issues IV and V: That the Houston Development Company paid Hans W. Rassmussen, the insurance agent, on the premium note executed in his favor by Carter, Jr., the sum of $800.00. The amount of this note was $1608.20. That such payment was made by Houston Development Company pursuant to the purpose and intention on the part of Carter, Jr., as found in answer to special issue No. I.

"Thereafter, plaintiffs filed a motion for entry of judgment in their favor on the verdict, or, in the alternative, for judgment non obstante veredicto, against all of the defendants for the full amount sued for.

"Defendants Dunn and Walling filed a motion for entry of judgment in their favor on the verdict.

"Thereafter, on July 1, 1935, the court ruled that the verdict entitled Dunn and Walling to a judgment in their favor and

plaintiffs' motion was overruled, and the motion of defendants Dunn and Walling for judgment on the verdict was granted, to which action of the court the plaintiffs seasonably and in open court excepted and gave notice of appeal.

"Judgment was rendered that plaintiffs take nothing by their action against the defendants Dunn and Walling, and that plaintiffs have judgment against the estate of Carter, Jr., for the full amount sued for, and that the defendants Dunn and Walling take nothing by their cross-action against plaintiffs, and that the estate of Carter, Jr., take nothing on its cross-action against the defendants Dunn and Walling, and that the action instituted by Carrie B. Carter, individually, but not otherwise, against the defendants be dismissed upon her motion.

"To the judgment of the court the present plaintiffs seasonably and in open court excepted and gave notice of appeal.

"The appellants are Second National Bank of Houston, as independent executor and trustee of the estate of S. F. Carter, Sr., deceased, and as trustee for Carrie B. Carter, and Carrie B. Carter as independent executrix and trustee of the estate of S. F. Carter, Sr., deceased. Those parties seasonably filed an original motion, and later and seasonably an amended motion to set aside the judgment theretofore rendered, and to enter a judgment for plaintiffs for the full amount sued for against all the defendants, or, in the alternative, to grant a new trial. This motion was, on the 27th day of July, 1933, overruled and proper objection and exception with notice of appeal was made in open court and noted. Within proper time appellants filed their appeal bond. Statement of facts was duly approved and seasonably filed in the trial court. The transcript and statement of facts were seasonably filed in this court, and the cause is now properly before this court for review.

"Appellants have contended throughout and now most earnestly contend that the verdict of the jury entitles the appellants to a judgment in their favor against all of the other parties; and if so, it is of course unnecessary to consider the voluminous statement of facts in this case. However, the statement of facts has been prepared and filed so that the entire record may be available to the court."

The pith of the controlling contentions of the opposing parties may, perhaps, be helpfully at once indicated by these respective quotations from their briefs here:

(1) The appellants say at their pages 23, 25, 27, 32, and 33:

"The issues in the case were, therefore, narrowed down to the question of whether the estate of S. F. Carter, Sr., expressly designated as beneficiary in the insurance policies, was justified in applying the proceeds of the insurance policies to other indebtedness upon which the estate of Carter, Jr., was obligated to the estate of Carter, Sr., or whether, instead, the Bank should have applied the insurance proceeds to payment of the indebtedness involved in this suit. * * *

"The only basis advanced by the defendants Dunn and Walling for a disregard of the rights of the designated-beneficiary in this case is the contention that Dunn and Walling (and Houston Development Company, which is not a party to this suit) were intended to be co-beneficiaries of the insurance. * * *

"Their only claim as to the insurance proceeds herein, is an asserted right to have the proceeds applied to the payment of the debt of Houston Development Company, upon which they were liable as endorsers, so that they might thereby be relieved. Just as in the Farracy Case (Farracy v. Perry), 12 S.W.(2d) 651 (Tex. Civ. App.) there is no contention 'that the policies of insurance, or the proceeds of same, ever belonged to the bankrupts, or that said bankrupts ever had any interest in same, except in so far as said policies were held or pledged as security for the bankrupts' debt to the bank.' Just as in that case, the claim against the proceeds is asserted against a designated-beneficiary, and there was no attempted change of beneficiary subsequent to that designation. * * *

"Of course, if the rules established by our courts for the protection of a designated-beneficiary can be avoided in whole or in part by merely offering proof that another party was intended to be a co-beneficiary, this would open a wide field for fraudulent claims upon insurance policies. It is just as practical for the insurance policy to contain a designation of all of the beneficiaries, either by name or by some descriptive terms, as it is to designate any one beneficiary. Yet neither the application nor the insurance policies contain any reference to any other beneficiary except the Carter, Sr., estate, or reflect that the

beneficiary-estate was designated as a 'trustee' for the benefit of any other parties. * * *

"While the designation of the beneficiary in any of these policies did not by its terms limit the rights of the beneficiary to those of a creditor of the insured, nevertheless the plaintiffs proceeded upon the theory that, even if so limited, they certainly could hold the full amount of the proceeds of the insurance policies to satisfy debts other than those involved in this suit, if they so chose."

(2) The appellees, upon the other hand, at their pages 14, 19, 20, 24, 25, and 30, present these summations:

"It is appellees' position that their defense to the notes sued upon was fully established by the verdict of the jury, and that by reason thereof the judgment of the trial court should be in all things upheld. * * *

"The two Aetna Life insurance policies involved in this suit expressly provide that 'during the life-time of the insured, the right to receive all cash values, loans and other benefits accruing hereunder, to exercise all options and privileges prescribed herein, and to agree with the company to any change in or amendment to this policy, shall vest alone in the insured;' further, that 'the beneficiary may be changed as often as desired. * * *' Accordingly, the beneficiary in said policies, 'the executors, administrators or assigns of Samuel F. Carter, Sr., father of the insured,' had no vested interest or right in said two policies during the lifetime of the insured, Fain Carter, Jr. * * *

"It seems plain, therefore, under the rule prevailing in Texas, that Fain Carter had the unlimited right to control the disposition to be made of these insurance policies on his life so long as he lived. The insured exercised that right by procuring these two policies with a certain purpose and intent, and the beneficiary took the proceeds of the policies subject to that intention and purpose; its rights to handle and apply the proceeds were charged with the duty to carry out that purpose and intention. The only insurable interest the beneficiary had. in the insured was as a creditor, and as such creditor it could receive said proceeds, but it had to liquidate with said proceeds the obligation that the insured intended it should pay therewith. The beneficiary had no vested right in said policy during the lifetime of the insured; upon his death it became possessed of a vested right, but this right was subject to and certainly could not supersede the purpose and the intention of the insured in procuring such policies and in designating the beneficiary as the recipient of the proceeds charged with the duty of carrying out such purpose and intention. That this intention and purpose of the insured governed the rights of the beneficiary, we propose to show in our succeeding propositions. * * *

"The corporate minute-book of Houston Development Company shows that on January 15, 1928, at its regular annual meeting, Fain Carter, president, director, and majority stockholder, together with appellees, who were also stockholders and directors of said company, unanimously passed the following resolution:

" 'Resolved: That S. F. Carter, Jr., President of the Houston Development Company, be empowered to insure his life for the protection of indebtedness of the Houston Development Company and the endorsements of the directors·of the company. The amount not to exceed $200,-000.00, and pay the premiums out of the funds of the Houston Development Company.'

"This resolution was passed just three days after Fain Carter, Jr., and appellees had executed to S. F. Carter, Sr., a guaranty-agreement in the sum of $100,000.00, guaranteeing the payment of any and all indebtedness which Houston Development Company then owed, or would thereafter owe S. F. Carter, Sr. At the time it was executed Houston Development Company was indebted directly to S. F. Carter, Sr., in the total sum of $23,500.00—being the indebtedness above mentioned. * * *

"The first and principal issue submitted to the jury and, in our opinion, the only one necessary to a determination of the case, was submitted in the following form:

" 'Special Issue No. 1.

" 'Do you find from a preponderance of the evidence that in the procuring of the Aetna insurance policies, Fain Carter, Junior, had the purpose and intention of protecting the S. F. Carter, Sr., Estate and T. C. Dunn and L. J. Walling against the payment of the obligation herein sued upon in the event of the death of Fain Carter, Jr.?

" 'Answer "Yes" or "No," as you may find.'

"To this issue the jury answered 'yes,' and it is appellees' contention that this finding entitled them to judgment in their favor."

Since both sides by their motions for judgment thereon both stand upon and affirm the sufficiency of the evidence to support the verdict (only the appellants alternatively requesting a recovery notwithstanding), the facts therein found must be regarded here as conclusively established; that being so, the complicated cause is reduced upon the appeal to the single question of which side as a matter of law upon the facts found in the verdict was entitled to a recovery; this court, although not en masse, concludes that the appellants have the better of the argument, and that the appellees' stated propositions fall short of entitling them to prevail over the appellants, whose superior right might be thus epitomized:

"The executors of the Estate of Carter, Sr., as sole designated beneficiaries in and as such at all times possessors of the insurance policies, without notice of any adverse claims in the appellees thereto, who (being also his creditors) had an insurable financial interest in the life of the insured, had the right to the insurance proceeds, unless (a) there was some ambiguity in the policies raising doubt as to who was the intended beneficiary, or unless (b) the beneficiaries had estopped themselves from asserting such right by expressly or impliedly agreeing to receive and hold the policies as security for the particular indebtedness involved in this suit upon which Walling and Dunn were endorsers," neither of which conditions existed in fact.

The authorities in Texas seem without uncertain sound to establish that such were the rights of the appellants as designated beneficiaries in the circumstances so appearing here, and that the weakness in appellees' opposing position lies in these, among other considerations:

That the intention of Carter, Jr., as shown, was merely one of protecting both his father's estate and his friends, Dunn and Walling, jointly and severally, against the obligations he might die owing either group, without specifying the one above the other, or that the policies he so took out were to be limited to the discharge first or solely of this particular indebtedness.

Further, the father's estate was mentioned first in such expressed intention of protection by insurance, and, when these two policies came to be actually taken out, that priority was apparently intentionally made exclusive by the designation of such estate as sole beneficiary, without even the mention of the others the son had theretofore entertained the purpose of also securing by insurance.

Further, the insured during his lifetime conclusively seemed to operate along parallel lines in dealing with his father's estate as his creditor upon the one hand and his associates, Dunn and Walling, as his co-obligees upon the other, in that he advised neither at any time that he had taken out insurance for the protection of the other, but only agreed with and informed each of what he had done for his or its protection alone.

Further, in the ample interim between these transactions with reference to protecting insurance he had with these different obligees and his death, he took no steps whatever to effect in the only way it could have been done under the law a change of beneficiary in the policies he had so made in favor of his father's estate exclusively.

Further, however securely he, together with Dunn and Walling, in purely inter sese dealings about such insurance (inclusive of the minute book resolution quoted supra) may have fastened a trust even upon these policies in favor of the latter as between the three of them, these transactions were ab initio, and thereafter always remained wholly ex parte and secret, as concerned appellants, until after Carter, Sr.'s, executors had collected and applied these proceeds on other debts than those involved here; wherefore, no such—to them—unknown trust ever became operative as against the always independent, preexisting, and entirely disassociated right in the father's executors that became finally vested on the son's death in the given circumstances.

Further, the mere potential power of Carter, Jr., to change ad libitum the beneficiaries in the policies at any time while living died with him, on his complete failure to exercise it before his death.

Further, these policies were delivered on issuance to the designated beneficiaries, and were always thereafter so retained by them without protest or adverse claim from anybody; nor was there ever then or thereafter a contemporaneous passage of the title thereto, nor of the proceeds therefrom,

to the appellees, or to any other third party.

Further, the answer to issue No. 1 was not conclusive, as claimed, toward the establishment of a trust binding upon the appellants for a number of the reasons already assigned, especially because it failed to determine (the court having refused appellants' request to have that element included) that Fain Carter's intent was to limit these policies to the discharge first or solely of this indebtedness or that such intent was ever communicated to or known by his father's executors either prior to Fain's death or until they had already collected and applied the insurance proceeds to other debts.

■ As before indicated, there was no ambiguity concerning, doubt as to, nor limitation upon, the beneficiary in these policies; the Carter, Sr., executors being therein expressly and solely so designated without qualification of any sort. In such circumstances both our statutes and our decisions in Texas clearly seem to contemplate that an express designation of beneficiaries of that character will be controlling. R. S. arts. 4732, 4831 (amended by Acts 1931, c. 48, § 5 [Vernon's Ann. Civ. St. art. 4831]), 5047, 5048, 5050, and article 7144a, § 16(b). Not only do these statutes require that each policy and the application therefor shall constitute the entire contract between the parties, but the Texas courts in construing them further determine that the beneficiary who has been so designated cannot be deprived of his rights as such except by strict compliance with the provisions of the policy itself for a change of beneficiary, and that, in the absence of such a change prior thereto, the rights of the beneficiary become vested upon the death of the insured. Farracy v. Perry (Tex. Civ. App.) 12 S. W.(2d) 651; Russell v. Owen, 203 N. C. 262, 165 S. E. 687; Carpenter v. Knights of Columbus, 239 Mass. 287, 131 N. E. 863; Hines v. Hines, 212 Mich. 50, 179 N. W. 299; Garner v. Bemis, 81 Fla. 60, 87 So. 426; Wright v. Wright (Tex. Civ. App.) 44 S.W.(2d) 1019 (writ of error denied by Supreme Court of Texas); American National Insurance Company v. Driver (Tex. Civ. App.) 52 S.W.(2d) 345 (writ of error denied by Supreme Court of Texas).

■ Of course, the designated beneficiary must show himself eligible to take the proceeds and all of them (Andrews v. U. C.

Life Ins. Co., 92 Tex. 584, 50 S. W. 572, and Id., 24 Tex. Civ. App. 425, 58 S. W. 1039), but that was done in this instance by undisputed proof of the facts that the father's estate held bona fide debts against the son in an amount far in excess of both the aggregate sums called for in the two insurance policies and the three notes sued upon. See, also, Killingsworth v. Bank (Tex. Com. App.) 32 S.W.(2d) 645, which is distinguished from Farracy v. Perry, supra.

■ Not only do the rights of an eligible beneficiary thus become vested on the death of the insured without having exercised his potential power while alive to make a change in disposition of the insurance, but there being—as in this instance under the jury's findings and the undisputed facts aliunde—no contemporaneous conveyance nor assignment to the appellees or other third parties of the policies or the proceeds thereof, but a final delivery of them to the named beneficiary as such on original issuance thereof, no equities, interests, nor trusts in them in favor of the appellees or others can now be asserted against the beneficiary thereunder, unless they were at least known to the latter prior to the death of the insured. While the appellees sought to establish the equivalent of some such conveyance or assignment of interest in these policies by the claimed agreement between the parties that the executors of Carter, Sr., would receive and hold the proceeds of the policies for the payment of the particular obligations here involved and in protection of the Houston Development Company, along with Dunn and Walling, from liability thereon, the jury, as quoted supra, expressly found that no such agreement or understanding was ever made, and that the designated beneficiaries had no notice of any intention on the insured's part that these policies should be applied to the discharge of any such liabilities rather than to protect Carter, Sr.'s, estate against other and different obligations the insured owed it.

Indeed, outside of the verdict, it was indisputably shown that appellant executors, pursuant to express agreement by written correspondence then had between Fain Carter and themselves, originally received these Ætna policies from him, and until his death continued to so hold them, as additional security (along with $110,000 of precisely the same sort of insurance likewise then held by them) for the whole indebt-

edness the son was obligated to protect his father's estate on, which exceeded $700,000 at the time of his death, with therefore only a total of such protecting insurance carried by him of $310,000 and his own estate left insolvent. Neither, under the facts on that feature, did the payments actually made of the premiums on these two policies work as a matter of legal consequence any change of beneficiary therein in favor of the appellees Dunn and Walling, for neither of them paid anything at all. On the contrary, the Houston Development Company paid the whole of that on the $30,000 policy and half that on the $170,000 one, while Fain Carter himself individually (or through his separate corporation, the Home-Building Company) paid the other half on the latter.

Wherefore, upon the whole controversy, it is thought that the conclusions stated, especially those to the effect that no impairment of the plenary rights accorded by our statutes to an unequivocally designated and unfettered beneficiary was shown, that no change therein in fact or law was effected prior to the insured's death, and that no trust nor equity in appellees' favor was impressed upon these proceeds in the hands of appellant-executors as rightful possessors thereof with never any notice or knowledge of any such adverse claim thereto, find support, not alone in the authorities cited supra, but also in these additional ones. Eatman v. Eatman (Tex. Civ. App.) 135 S. W. 165; Garner v. Bemis, 81 Fla. 60, 87 So. 426; Ryan v. Boston Letter Carriers' Mut. Ben. Ass'n, 222 Mass. 237, 110 N. E. 281, L. R. A. 1916C, 1130; Carpenter v. Knights, 239 Mass. 287, 131 N. E. 863; Herring v. Sutton, 129 N. C. 107, 39 S. E. 772, 773; Central Nat. Bank of Washington v. Hume, 128 U. S. 195, 9 S. Ct. 41, 32 L. Ed. 370; Coleman v. Anderson, 98 Tex. 570, 86 S. W. 730; Standard Life & Acc. Ins. Co. v. Taylor, 12 Tex. Civ. App. 388 34 S. W. 781; Proctor v. Marshall, 18 Tex. 63; Gardner v. Watson, 76 Tex. 25, 13 S. W. 39; Brice v. Hamilton, 12 S. C. 32.

Nor is it believed the authorities so ably presented by the appellees establish different principles upon the legal equivalent of the state of facts obtaining in this instance; rather, we think, they will be found to have dealt with materially different factual situations, as where the policy was payable to the insured's estate; hence belonged to him during his lifetime, and was control-

lable by his own act or intention in favor of a third party as against the representative of his estate after his death, illustrated in Nashville Trust Co. v. Bank, 123 Tenn. 617, 134 S. W. 311; Mullins v. Thompson, 51 Tex. 7, and Northern Life Ins. Co. v. Burkholder, 131 Or. 537, 283 P. 739; or where a creditor beneficiary, having no other interest than a debt less than the amount of the policy, is held to be a trustee for the insured's estate for any excess received by him from the insurance over the indebtedness, as in Goldbaum v. Blum, 79 Tex. 638, 15 S. W. 564; or where the designated beneficiary had full notice of, and assented to, the trust, like Kerr v. Crane, 212 Mass. 224, 98 N. E. 783, 40 L. R. A. (N. S.) 692, and footnote collated cases; or where the designation of the beneficiary, or the trustee, or the nature or extent of his interest, as the case may be, was ambiguous, uncertain, or incomplete, as in Jackson v. Hughes (Tex. Civ. App.) 52 S.W.(2d) 687 [writ of error granted (Tex. Com. App.) 81 S. W.(2d) 656]; Crotty v. Union Mut. Life Ins. Co., 144 U. S. 621, 12 S. Ct. 749, 36 L. Ed. 566; Andrews v. Ins. Co., 92 Tex. 584, 50 S. W. 572; Mullins v. Thompson, 51 Tex. 7; Lord v. New York Life, 95 Tex. 216, 66 S. W. 290, 56 L. R. A. 596, 93 Am. St. Rep. 827; and many other cited authorities.

Further discussion is deemed unnecessary, since what has been said disposes of the merits of the appeal. It follows therefrom that the judgment should be reversed, and that a decree should enter here awarding the appellants a recovery against the appellees for the amount found to be due upon the notes sued on; it has accordingly been so ordered, with Justice LANE, dissenting.

Reversed and rendered.

LANE, Justice (dissenting).

I find myself unable to agree with the conclusion reached by the majority; hence I respectfully enter this dissent. A general statement of the nature of the case and the facts involved appears in the majority opinion. It may be well to add to that statement the following salient facts:

The record discloses, without dispute, that S. F. Carter, Jr., generally known as Fain Carter, procured the issuance of the two insurance policies in question, aggregating $200,000, pursuant to a resolution passed by the board of directors of the

Houston Development Company. This board was composed of Fain Carter and the appellees Dunn and Walling, who also constituted all of the stockholders of this corporation. This resolution, unanimously adopted by the directors, read as follows: "Resolved: That S. F. Carter, Jr., President of the Houston Development Company, be empowered to insure his life for the protection of indebtedness of the Houston Development Company and the endorsements of the directors of the company. The amount not to exceed $200,000.00, and pay the premiums out of the funds of the Houston Development Company."

All of the evidence in the record conclusively shows that this resolution, in providing that this amount of insurance should be taken out "for the protection of indebtedness of the Houston Development Company and the endorsements of the directors of the Company," referred to the indorsements of the appellees Dunn and Walling on the notes sued upon in this case. After the passage of this resolution, Fain Carter applied for life insurance in the very amount provided for in the resolution, to wit, $200,000, and this very amount fitted with almost exact nicety the debts of the company which the insured wanted to protect with the insurance which he purchased. He approached Hans W. Rasmussen, agent of the Ætna Life Insurance Company, who wrote the policies in question. Mr. Rasmussen testified that Fain Carter told him he wanted to take out some business insurance; "that he and Mr. Dunn and Mr. Walling (appellees) had had a meeting previously with reference to his taking out this insurance, and he said he wanted to take it out for the purpose of protecting these two men. He said it would leave them in a hell of a shape in the event of his death." The insured further told Mr. Rasmussen he wanted insurance in the sum of $200,000, of the five-year term type, but, because of certain regulations of the insurance company, the amount was divided into two policies, one of $170,000 of the five-year kind, and one for $30,000 of the ordinary life.

It is thus conclusively shown that it was the purpose and intention of Fain Carter, in procuring this $200,000 of insurance, that the proceeds of such policies be used for the payment of the obligations sued upon by appellants, which fact the jury found in response to the first issue submitted to it. Without going too far into the

very clear and convincing evidence sustaining this jury finding, it may be added that, in addition to the resolution and the testimony of the agent who wrote the policies in question, two other disinterested witnesses, C. O. Woolsey and L. B. Jones, both of whom were business associates of Fain Carter in his other enterprise, the Fain Carter Home Building Company, testified to facts clearly showing that Fain Carter had procured these policies pursuant to the resolution passed and for the purpose of protecting Dunn and Walling against loss by reason of their indorsements of the notes involved in this suit.

The total amount of the premium on the ordinary life policy was paid out of funds belonging to the Houston Development Company by that company's check, and one-half of the premium on the term policy was paid in the same manner by the Houston Development Company. Appellees Dunn and Walling owned approximately 50 per cent. of the stock of this company and Fain Carter the other one-half. The balance of the premium on the term policy was paid by Fain Carter personally. Appellants contributed nothing whatever toward the payment of these premiums.

The facts above detailed, together with other facts appearing in the record, some of which were testified to by witnesses introduced by appellants, lead irresistibly to the conclusion that Fain Carter in fact procured these policies of insurance with the definite purpose and intention that the notes sued upon in this case should at his death be liquidated from the proceeds of these policies.

I cannot agree with the statement made in the second paragraph of the opinion of the majority, where it is stated that the bank and Carrie B. Carter, independent executors and cotrustees, were trustees for the estate of Carter, Sr., deceased, and Carrie B. Carter only, as I think they were also trustees for Dunn and Walling, as I shall later show.

I also disagree with the statement in the twelfth paragraph of the opinion, where it is stated it became necessary for plaintiffs as executors of the estate of Carter, Sr., to bring this suit.

Appellants were liable upon the notes sued on as guarantors, while appellees were liable thereon as indorsers. The record shows that appellant, the estate of S. F. Carter, Sr., deceased, was possessed of a very large amount of property. Knowing

that this estate, his father's estate, would be called upon to pay these notes, along with Dunn and Walling, Fain Carter did the natural thing in designating his father's estate as the beneficiary of these policies. It conclusively appears from the record that Fain Carter did not want his friends and associates, Dunn and Walling, in the event of his death, to bear the burden of discharging this indebtedness. As president and general manager of the corporation, and actively in charge of its affairs, he felt responsible for the indorsement of his friends, Dunn and Walling. It appears entirely reasonable that Fain Carter should have designated the guarantor of these notes, the S. F. Carter, Sr., estate, as the beneficiary in these policies, since he well knew that an application of the proceeds by such beneficiary in a manner consistent with his repeatedly declared purpose and intention and in accordance with the resolution adopted by directors of the Houston Development Company would entirely discharge the estate from its liability on the guaranty, and at the same time free his friends and associates from any liability on their indorsement. He was not an attorney, and hence wholly unfamiliar with any technical rule about varying the terms of written instruments by parol evidence. He had placed evidence of his purpose and intention as to how the proceeds of these policies should be applied in the minutes of the Houston Development Company, and, no doubt, assumed that the executor of his father's estate would carry this declared purpose into effect.

The majority opinion seems to be based on the erroneous premise that appellees are seeking to uphold the right to alter the terms of the insurance policies through the introduction of parol testimony, and, furthermore, are attempting to effectuate a change in the designated beneficiary. This is a misconception of appellees' real contention and defense. It cannot be questioned that the only right the Carter, Sr., estate could assert to the proceeds of the policies was by reason of its debtor-creditor relationship to the insured. Before the Carter, Sr., estate, the designated beneficiary in said policies, could legally hold the proceeds thereof, it was essential that it make a showing of the existence of an indebtedness owing to it by the insured. See Wilke v. Finn et al., 39 S.W.(2d) p. 836, by the Commission of Appeals. Thus the designated beneficiary itself was required to offer extrinsic evidence in order to establish its right to receive and hold the proceeds of such policies. It would seem anomalous to hold that, although the named beneficiary must itself resort to extrinsic evidence showing the existence of a creditor-debtor relation in order to establish its right to the proceeds of the policies, proof adduced by appellees which would show the particular indebtedness forming the basis of this relationship would occasion a variance of the terms of the policy. The beneficiary designated in the policies is not sought to be changed through the introduction of evidence merely showing the particular debts the creditor-beneficiary is to discharge thereby. The proceeds of the policies are paid to the very beneficiary designated therein in absolute harmony with the terms of the policy. It was not sought to have payment of the proceeds made to another and different beneficiary. Appellees' contention is that, since it appears without dispute that the assured procured these policies with the declared purpose and intention of protecting Dunn and Walling, as well as his father's estate, the beneficiary received the proceeds of the policies as a trustee charged with the duty of applying such proceeds in accordance with the intention and purpose of the assured. The law itself placed upon the beneficiary of these policies the duty to show wherein it had an insurable interest in the life of the assured; that is, to disclose the basis of its right and claim to the proceeds. This extrinsic evidence necessary to be introduced before the beneficiary could hold the proceeds merely defines the relationship between the beneficiary and the insured, which the policy fails to do and which must be done before the beneficiary could be legally entitled to hold the proceeds. To say that evidence is admissible to show the existence of an indebtedness owing by the insured to the beneficiary, but that evidence showing the particular indebtedness which the insured intended to be discharged from the proceeds of the policies is inadmissible, seems palpably erroneous; yet that is the very rule of law the decision of the majority of this court establishes in this case.

Nor does the introduction of such evidence violate the statutes of our state relating to the designation of beneficiaries in insurance policies, as seems to be held by the majority opinion. These statutes merely define the rights of the parties arising with the insurer and have no application whatsoever in a contest between the

designated creditor-beneficiary and other parties claiming rights and equities in and to the proceeds after they have come into the hands of the beneficiary designated in the policy.

Beginning with the decision of the Supreme Court in the early case of James v. Fulcrod, 5 Tex. 512, 55 Am. Dec. 743, and later broadened by the decision in Allen v. Allen, 101 Tex. 362, 107 S. W. 528, the courts of this state have consistently held that a parol trust may be shown in either personalty or realty, even though the contract or conveyance involved be entirely clear and unambiguous. No sound reason exists why the same doctrine should not be applied to the facts of this case.

Since the insured, Fain Carter, reserved the right, under the provisions of the policies in question, to change the beneficiary thereof at will (which clearly appears from the policy in evidence), the designated beneficiary acquired no vested interest therein, Splawn v. Chew, 60 Tex. 532; Farracy v. Perry (Tex. Civ. App.) 12 S.W.(2d) 651, writ refused; Fuos et al. v. Dietrich (Tex. Civ. App.) 101 S. W. 291; Texas Jurisprudence, vol. 24, § 73, which could operate to prevent a parol trust being engrafted by Carter on the proceeds of such policies in the hands of the designated beneficiary.

The evidence offered by appellees showing that the creditor-beneficiary was a trustee charged with the duty of applying the proceeds of the insurance policies upon the debt sued upon does not constitute a variance or an alteration of the provisions of the policy. It seems clear that this is nothing more than explanatory of the designation made in the policy. The courts of this state have uniformly held that parol evidence is admissible to explain the terms of a written instrument. See, for instance, Pope v. Anthony, 29 Tex. Civ. App. 298, 68 S. W. 521, writ of error refused.

The majority opinion states that the finding of the jury that Fain Carter procured the policies in question for the purpose and with the intention of protecting appellees Dunn and Walling as well as the Carter, Sr., estate, against the payment of the obligations herein sued upon is not sufficient to entitle appellees to a judgment because the designated beneficiary (Carter, Sr., estate) had not been served with notice of this intention. In other words, it is distinctly held by the majority that one collecting and receiving the proceeds of a policy for a certain purpose, as a trustee, must have notice of the creation of the trust before the death of the insured in order for it to constitute a valid and binding trust.

This holding is at variance with the well-established rule that notice to a trustee is not essential to the creation of a voluntary trust. Without exception, the leading text-writers on the subject of "Trusts" state that notice to the trustee is not essential in order to create a valid trust. The following quotation from Perry on Trusts, § 105, p. 137, is illustrative of this view: "Nor is notice to the cestui que trust or to the trustee and acceptance by him, essential to the validity of a voluntary trust as against the settlor, if it is otherwise perfectly created. But the absence of notice may become a fact of more or less importance in determining whether the trust is perfectly created or not. As between purchasers for value, notice or no notice may have important effects; but a voluntary trust, as between the settlor, the trustee, and the cestui que trust, can be perfectly created without it."

Substantially, the same rule is announced in 6 Pomeroy's Equity Jurisprudence, § 1007; Bogert on Trusts, p. 72; Lawrence on Equity Jurisprudence, vol. 1, p. 125.

This court, in the case of Clausen v. Jones, 18 Tex. Civ. App. 376, 45 S. W. 183, 184, 185, had occasion to decide the identical question here presented. The insured, William Jones, carried a benefit certificate with the Knights of Pythias in the amount of $3,000, payable upon his death to his wife, Elvine Jones. Three minor children by a former marriage intervened in an action brought by the beneficiary to recover the proceeds of the policy. The children alleged that their father did not intend to vest his wife with the entire amount of the proceeds of the policy by designating her as the sole and only beneficiary, but, on the contrary, that he intended for her to receive only one-third of the proceeds and the children the other two-thirds. They further alleged that it was the intention of the insured, William Jones, to ingraft, and the law acting upon that intention did ingraft, a parol trust upon the certificate in favor of the children to the extent of this two-thirds interest, notwithstanding the fact that the policy made no mention thereof and that it designated his wife as the beneficiary without restriction or limitation. The children alleged that

the insured made frequent declarations with respect to their interest in the certificate disclosing a clear intention that the designated beneficiary was to collect their interest for their use and benefit. The designated beneficiary denied that the insured ever created or ingrafted a parol trust upon the certificate. A judgment was rendered upon a verdict of the jury in favor of the named beneficiary, the wife. In the opinion of this court it is stated:

"The interveners distinctly averred the parol trust created and ingrafted by William Jones upon the benefit certificate was power given the plaintiff to collect the whole amount of the insurance secured by the benefit certificate, and nothing more. This being the extent of the trust confided to her, we cannot see that Mrs. Jones' conduct towards the children was relevant or pertinent to the issue joined between the parties. Mrs. Jones denied the existence of a trust, and the interveners averred that the trust only authorized her to collect the whole of the money. * * * The fourth error assigned is the refusal of the court to give the following requested charge (No. 1) asked by interveners, which is, in substance, that William Jones had the power to direct in express terms that his children should share in the proceeds of his benefit certificate, provided he plainly designated the funds to be shared, and the persons who should partake of the funds, and the amount or proportion which the persons entitled should respectively receive. The testimony of the witness Frank H. Jones tended to establish the issue distinctly made by the pleadings,—the interveners affirming, and the plaintiff denying,—'Did or did not Wm. Jones designate his children and his wife as the beneficiaries of the benefit certificate, with the declaration that his wife should receive one-third, and the children two-thirds.' The interveners had the right to have this issue distinctly submitted to the jury. This was not done by the court's charge, and we think the charge requested should have been given."

The decision of the majority is squarely in conflict with the holding in the above case. There is nothing in the record here to differentiate this case from that one.

The Austin Court of Civil Appeals, in the case of Jackson et al. v. Hughes, 52 S.W. (2d) 687, 689, held that a parol trust could be shown in the proceeds of an insurance policy, "although the policy may be entirely silent upon the subject." The benefici-

ary named in the policy was Duwain E. Hughes, trustee. It did not appear upon the face of the policy in what manner the proceeds were to be applied. On the trial of the case, the insurance agent, who had obtained the policy for the insured, was permitted to testify with respect to the declarations made by the insured as to her intention relative to the application of the proceeds of said policy. It was urged on appeal that the insurance agent could not testify to the declarations of the insured because such declarations varied the terms of the written policy. This position was rejected by the appellate court. In its opinion the court, speaking through Judge McClendon, said:

"The provisions of the policy to the effect that it embodied the entire contract of the parties and that the beneficiary could not be changed except with the consent of the insured had reference only to the relations between the insurer and the insured. The policy does not purport to define the relations between the insured and the beneficiary. A trust may be shown by parol in the beneficiary, although the policy may be entirely silent upon the subject and the insurer in entire ignorance thereof. This principle has been extended to cases in which the cestui que trust was not of a class who might be beneficiaries under the policy. Kerr v. Crane, 212 Mass. 224, 98 N. E. 783, 40 L. R. A. (N. S.) 692; Lashley v. Lashley, 212 Ala. 255, 102 So. 229; Crews v. Crews' Adm'r, 113 Ky. 152, 67 S. W. 276; Johnston v. Scott, 76 Misc. 641, 137 N. Y. S. 243.

"Appellee was not disqualified to testify under R. S. art. 3716. No party to the suit was claiming the proceeds of the policy as an heir of Mrs. Jackson; nor were such proceeds any part of her estate. Grand Lodge, etc., v. Dillard (Tex. Civ. App.) 162 S. W. 1173.

"The testimony of the insurance agent which we hold to be competent and admissible clearly and unequivocally establishes an active trust."

This case was recently passed upon by the Commission of Appeals [81 S.W.(2d) 656], in which the opinion rendered by Judge Critz was adopted by the Supreme Court. Although the Commission of Appeals differed with the Court of Civil Appeals on one particular phase of the case, it expressly approved the holding above set forth. Unquestionably, the doctrine announced by the majority is in conflict with

that declared by Judge Critz, which was expressly approved by the Supreme Court.

The courts of other states have many times announced the rule that notice to the trustee is not essential to the creation of a valid and binding trust. A few of the leading cases so holding are the following: Minot v. Tilton, 64 N. H. 371, 10 A. 682; Donithen v. Independent Order of Foresters, 209 Pa. 170, 58 A. 142; O'Brien v. Holden, 104 Vt. 338, 160 A. 192; Northrip v. Burge, 255 Mo. 641, 164 S. W. 584. The holding of the majority, therefore, seems to be squarely in conflict with a former decision of this court, a holding by the Austin Court of Civil Appeals which received the approval of the Supreme Court, and with the overwhelming weight of authority as established by the courts of last resort throughout the land.

The intention of the insured in cases of this kind has been held controlling and paramount by the courts of this and other states in many cases. The writer can perceive no sound reason why this intention should not be given full force and effect in this case. It would unduly lengthen this opinion to attempt to review the many cases which sustain the views herein expressed, but among their number may be cited the following: Mullins v. Thompson, Adm'r, 51 Tex. 7; Raley v. Ross, 59 Ga. 862; Grant's Adm'rs v. Kline, 115 Pa. 618, 9 A. 150; Harrel's Adm'r v. Harrel, 232 Ky. 469, 23 S.W.(2d) 922; Hancock v. Fidelity Mutual Life Ins. Co., 53 S. W. 181 (Court of Chancery Appeals of Tennessee); American Life & Health Ins. Co. v. Robertshaw, 26 Pa. 189; Springfield Mutual Association v. Ogle, 248 S. W. 977 (Missouri Court of Appeals); Mutual Life Ins. Co. of New Jersey v. Cummings, 66 Or. 272, 126 P. 982, 133 P. 1169, 47 L. R. A. (N. S.) 252, Ann. Cas. 1915B, 535; Pace v. Pace, 19 Fla. 438; Mutual Life Ins. Co. v. Devine, 180 Ill. App. 422; Northern Life Insurance Company v. Burkholder, 131 Or. 537, 283 P. 739; and Loos v. John Hancock Mutual Life Ins. Co., 41 Mo. 538, 539.

It is argued in the majority opinion that, if a parol trust may be ingrafted upon the proceeds of an insurance policy, a wide field will be opened for fraudulent claims. This proposition might be dismissed with the statement that our Supreme Court does not seem to have been very much impressed with the force of this argument, as in the early years of our jurisprudence it established the right of a grantor to ingraft a parol trust upon his solemn deed of conveyance, and this rule, although since many times vigorously assailed, has been steadily adhered to by that court.

The real answer, however, to the dangers which the majority assume may arise from following the rule permitting a parol trust to be ingrafted upon the proceeds of an insurance policy in the hands of the designated beneficiary, is that ample protection is afforded against such frauds by the application of the rule declared by our Supreme Court with reference to the quantum of proof required to sustain the existence of a parol trust, which is that the proof adduced must be of such a clear and convincing nature as to satisfy the mind of the court that a trust was intended to be created. In the ordinary civil case, it is sufficient if there be some evidence to sustain the finding of the court or jury. Not so, however, when a parol trust is claimed to exist. A much greater burden is placed upon the party seeking to establish such trust. The proof offered by him to establish the same must be so clear and convincing as to satisfy the minds, not only of the trial court, but of the appellate judges as well, that a trust was in truth and in fact intended to be created. Under this salutary rule there is little room for fraud. On the other hand, to deny the right to ingraft a parol trust upon the proceeds of an insurance policy in the hands of a named beneficiary, when the evidence is clear and convincing that the assured, the one who has the right to give direction to the object of his bounty, intended for such proceeds to be used for a particular purpose, would operate in many instances to bring about the grossest kind of fraud and imposition.

The facts shown by this record well illustrate this view. Here the undisputed evidence shows that Fain Carter took out the insurance policies for the definite and specific purpose of protecting, not alone the Carter estate, but also his associates, Dunn and Walling, who had come to his aid and assistance by indorsing his paper for a large sum of money. By such indorsement they had put themselves in a position where they might sustain a very large financial loss. It appears from the undisputed evidence that, when Carter took out these policies, he was inspired by the laudable object and purpose of protecting these loyal friends from financial ruin.

The decision of the majority absolutely thwarts the admitted purpose and intention of the assured in this respect, and this, notwithstanding the fact that it appears that the premiums on the policies involved were largely paid by funds, a substantial portion of which actually belonged to Dunn and Walling as stockholders of the Houston Development Company.

Whether following the rule to permit a parol trust to be ingrafted upon the proceeds of an insurance policy in the hands of the designated beneficiary will open a field for fraud' when it is safeguarded by the rule requiring the same to be established by clear and convincing testimony is open to serious question, but it is not open to question that the result of the majority opinion in this case is to perpetrate a grave injustice against those whom the assured indisputably intended to protect in this case, and, if the doctrine announced by the majority is permitted to stand as the law of this state, unquestionably many similar injustices will result.

I strongly feel that the majority of this court, in holding that the jury's finding did not entitle appellees to a judgment, have completely ignored the well-established principles of law aforementioned. In so doing, the avowed purpose and intention of the insured—elements always given great weight and viewed with extreme respect by the courts—were entirely disregarded. In this case, more so than many others where the intention and purpose of the insured were given controlling effect, natural justice demands an application of the law which will permit the proceeds of these policies to be applied in accordance with the unquestioned will and desire of the insured. The writer is convinced that a refusal to give effect to the uncontroverted facts and to the jury's finding, a refusal to uphold the intention and purpose of the insured in procuring these policies of insurance, operates, in this instance, as a travesty on justice.

Wherefore I am unable to agree with the majority in the reversal of the trial court's judgment and its rendition for appellants, but, to the contrary, I find that the law and the undisputed evidence demand an affirmance of the judgment of the trial court.

I have been greatly assisted in the preparation of the foregoing dissenting opinion by the very able and exhaustive brief of able counsel for appellees Dunn and Walling, and have availed myself of the expressions and reasons so well stated in the brief as to why the judgment of the trial court should, in all things, be affirmed, and I here now adopt same as my own.