**FARRACY v. PERRY.** (No. 732.)

Court of Civil Appeals of Texas. Waco.
Dec. 20, 1928.

Rehearing Denied Jan. 17, 1929.

652

Wynne & Wynne, of Kaufman, and McCormick, Bromberg, Leftwich & Carrington, of Dallas, for appellant.

Thos. R. Bond, of Terrell, and Burgess, Burgess, Crestman & Brundridge, of Dallas, for appellee.

STANFORD, J. This suit was brought by appellant, as trustee in bankruptcy of the estate of R. H. Moore individually, and of the Terrell Motor Company, and the Moore-Perry Company, each of which was a partnership composed of R. H. Moore and L. C. Perry; the latter being dead at the time of the institution of the bankruptcy proceedings. The suit was brought against Mrs. Minnie E. Perry, widow and sole beneficiary under the will of Louis C. Perry, deceased, and against D. E. Nicholson, trustee under a certain deed of trust to the State National Bank. The suit was brought to recover certain items claimed by appellee against real estate and for possession of some promissory notes. The pleadings are sufficient to raise all issues made by the evidence, which will be stated in connection with our disposition of appellant's assignments.

The case was tried before the court without a jury, and judgment rendered denying appellant any relief, but awarding appellee Mrs. Perry a recovery on her cross-action against appellant for $173. Upon appellant's request, the court filed findings of fact and conclusions of law, also supplemental findings of fact. Appellant has duly appealed, and presents the record here for review.

Under his first and second propositions, appellant contends, in effect, that the court erred in refusing to award him the relief sought. The record shows, and the court found: That L. C. Perry died November 2, 1926; that R. H. Moore, individually, and R. H. Moore, surviving partner of the copartnership doing business under the name of Terrell Motor Company and Moore-Perry Company, were adjudged bankrupts on December 29, 1926, on an involuntary petition of their creditors filed November 13, 1926, and that appellant was appointed and duly qualified as trustee of said estates; that, at the time of the death of L. C. Perry and on December 14, 1926, the Terrell Motor Company owed primary obligations to the State National Bank of Terrell amounting to $16,247.96, and as indorsers of the J. P. Coon notes owed said bank $2,069.64; that at said time L. C. Perry was indorser on all of the foregoing obligations, and was obligated to the State National Bank for other debts, making a total indebtedness to said bank of $23,784.97; that on December 14, 1926, the State National Bank of Terrell held a deed of trust lien on five houses and lots situated in Terrell, four of same being the property of the Terrell Motor Company and one the property of R. H. Moore, said deed of trust having been executed particularly to secure $6,000 of the copartnership indebtedness above described, and also to secure any and all indebtedness of the copartnership to said State National Bank and any renewals or extensions of same; that State National Bank of Terrell also held as collateral to the Terrell Motor Company's indebtedness to it certain customers' notes, which were partnership property, amounting in the aggregate to about $5,000; that on December 14, 1926, the State National Bank of Terrell was the owner of vendor's liens on the west part of lots 5 and 6, block 346, in the city of Terrell to secure the above J. P. Coon notes shown in deed records, and which Coon notes were indorsed by L. C. Perry; that the Bankers' Life Insurance Company issued its two policies in the respective sums of $15,000 and $10,000, insuring the life of L. C. Perry, payable to the executors, administrators, or assigns of the assured; that, after the issuance of said two policies the beneficiary was changed, as provided in the policy, to Minnie E. Perry, wife of L. C. Perry, "with the right of revocation"; that thereafter, on July 7, 1925, L. C. Perry, joined by his wife, Minnie E. Perry, as beneficiary, made a written assignment of the $15,000 policy to the State National Bank of Terrell, and thereafter, on August 5, 1926, made a like assignment to said bank of the $10,000 policy.

After the death of L. C. Perry on November 2, 1926, after the payment of a loan on said policies as security due the insurance company, the sum of $20,923 was admitted to be due on said two policies, and checks totaling said sum were drawn by the insurance company, payable to the State National Bank of Terrell, assignee, and to Minnie E. Perry, beneficiary. The assignments to the State National Bank were in writing, and provided that the interest of the assignee in the respective policies "is limited to said assignee's valid pecuniary claim against the assignors existing at the time of settlement of the policy, the remainder of said policy, if any, being unaffected by this assignment"; that on or about December 14, 1926, appellee Minnie

E. Perry executed her note to the First National Bank of Terrell and thereby procured from said First National Bank the sum of $23,784.97, which said sum on said date she paid to the State National Bank of Terrell, in consideration of which the said State National Bank of Terrell on said date, in writing, assigned and transferred to the said Minnie E. Perry all of the notes and obligations of the Terrell Motor Company then held by it, together with all collateral held by it, including the two policies of insurance, to secure its said indebtedness above set out of $23,784.97; that there existed a custom between the State National Bank of Terrell and the Terrell Motor Company, in the collection of customers' notes held by said bank as collateral, whereby collections would be made by both said bank and Terrell Motor Company; that, in accordance with said custom, the Terrell Motor Company, prior to the filing of the bankruptcy petition, had collected and had failed to pay over to said State National Bank the sum of $750 on said customers' notes so held by said bank as collateral; that the Terrell Motor Company, by its duly authorized representative, being unable to pay over said $750, did, prior to bankruptcy, transfer and deliver to said bank, in lieu of the payment of said $750, additional customers' notes, which said parties estimated were of the value of $750, which said value was approximately correct.

There existed no agreement, as contended by appellant, between R. H. Moore and L. C. Perry, to the effect that each partner would take out a policy of $10,000 life insurance for the benefit of the partnership, and, if any such agreement existed, it was not brought to the knowledge of the State National Bank of Terrell prior to the assignment of said policies and the giving of said several collateral liens. There existed no agreement, as contended by appellant, by the State National Bank of Terrell that said bank should first resort to the money payable to it under said two insurance policies that had been assigned to it; for the payment of its debts against the Terrell Motor Company, and that, upon the payment of said indebtedness from the proceeds of said life insurance policies, the other collateral held by the bank should be returned by it to said copartnership and said R. H. Moore. There existed no agreement, as contended by appellant, with the State National Bank of Terrell, to the effect that the deed of trust given by R. H. Moore to D. E. Nicholson, trustee, on the five pieces of property, was given to secure only a certain indebtedness of $4,000 then advanced, and that, when same was paid, said deed of trust would be released. Neither the plaintiff, appellant here, nor the Terrell Motor Company, has ever paid or offered to pay any part of the indebtedness of the Terrell Motor Company to the State National Bank

or to Minnie E. Perry. Plaintiff, appellant here, since he qualified as trustee, has collected on the collateral notes involved herein $173. There existed no equity in said properties herein, including the five tracts of land and the customers' notes held by said State National Bank as collateral, over and above the liens and indebtedness owing by the partnership of L. C. Perry and R. H. Moore to said State National Bank. The State National Bank held a superior or prior unsatisfied lien upon all the properties involved in this suit, including the five tracts of land and said customers' notes, to secure the entire indebtedness due and owing to said State National Bank, all of which indebtedness and collateral was transferred to Minnie E. Perry by said bank.

■ We have in the main copied above the court's findings of fact covering the entire case, which we find are supported by the evidence, and which we adopt as the findings of this court. It will be observed that; of the total indebtedness of $23,748.97 due the State National Bank of Terrell, the partnership, known as the Terrell Motor Company, composed of L. C. Perry and R. H. Moore, owed $18,317.60 of same, and L. C. Perry individually owed the remainder, to wit, $5,467.37. To secure said total indebtedness of $23,784.-97 to the State National Bank, customers' notes to the amount of approximately $5,000 were delivered to said bank as collateral, and a deed of trust lien on five lots in Terrell was given said bank. Said customers' notes and four of said lots were partnership property of the Terrell Motor Company. Also, to secure any amount for which L. C. Perry might be liable to said State National Bank of Terrell, he and his wife, Minnie Perry, transferred to said bank as collateral security the two policies of insurance, aggregating $25,000 in each of which Minnie E. Perry was designated as beneficiary. Each of these policies was originally for the benefit of the executors, administrators, or assigns of L. C. Perry, with the right of revocation, but on November 22, 1924, in each policy the beneficiary was changed to Minnie E. Perry, wife of the insured, with right of revocation. It is true Minnie E. Perry had no vested interest in said policies during the life of her husband. Hopkins v. Northwestern Life Assur. Co. (C. C. A.) 99 F. 199; Hogan v. Fauerbach Brewing Co. (C. C. A.) 194 F. 846; May on Insurance, § 399m; Cooley's Briefs on the Law of Insurance, 3755; Elliott on Insurance, § 355; Kerr on Insurance, § 231; Mutual Benefit Life Ins. Co. v. Swett (C. C. A.) 222 F. 200, Ann. Cas. 1917B, 298; Splawn v. Chew, 60 Tex. 534; Fuos v. Dietrich (Tex. Civ. App.) 101 S. W. 291. It is also true, we think, that L. C. Perry could have transferred said policies to the bank as collateral security without being joined by his wife, and it was probably unnecessary

for her to join him in said transfer, and her so doing probably created no liability on her part for her husband's indebtedness to the bank. Revised Statutes, art. 4623; Red River Nat. Bank v. Ferguson (Tex. Civ. App.) 192 S. W. 1088; Shaw v. Proctor (Tex. Civ. App.) 193 S. W. 1104; First State Bank v. Tinkham (Tex. Civ. App.) 195 S. W. 880; Union Trust Co. v. Grosman, 245 U. S. 412, 38 S. Ct. 147, 62 L. Ed. 368.

During his lifetime, L. C. Perry could have changed the beneficiary and named some one else, but he did not do so. His transferring said policies to the bank as collateral security, even though the debt thus secured on settlement appeared to be more than the proceeds of said policies, was by no means equivalent to his designation of another beneficiary. The assignments of said policies recite: "The interest of the assignee is limited to said assignee's valid pecuniary claim against the assignors existing at the time of settlement of the policies, the remainder of said policies, if any, being unaffected by this assignment."

While Mrs. Perry had no vested right in said policies during the life of her husband, but had only an expectancy, on his death, however, her expectancy became a vested right to the entire proceeds of said policies, subject only to the rights of the bank. The bank had only a lien on said policies regardless of the form of the assignment. Cawthon v. Perry, 76 Tex. 383, 13 S. W. 268; Coleman et al. v. Anderson et al. (Tex. Civ. App.) 82 S. W. 1057; Harde v. Germania Insurance Co. (Tex. Civ. App.) 153 S. W. 666. The debt due the bank by the Terrell Motor Company and L. C. Perry and R. H. Moore having been incurred before the policies were transferred to it as collateral security, and appellee Mrs. Perry not being in any way personally responsible for said indebtedness, and, on the death of L. C. Perry, the title to said policies and the proceeds of same having vested in Mrs. Perry and become her separate property, subject only to the rights of the bank, said policies, her said separate property, occupied the position of a surety for the payment to the State National Bank of Terrell of $18,-317.60 due to said bank by the partnership of the Terrell Motor Company, and $5,467.37 which was an obligation against the estate alone of L. C. Perry, deceased (Washington Life Insurance Co. v. Gooding, 19 Tex. Civ. App. 490, 49 S. W. 123, writ refused); and the fact that the bank claimed the right to hold said policies as collateral security for the total amount of $23,784.69, more than the amount of the proceeds of same, did not change the fact that said policies, and the proceeds thereof, were and was her separate property; nor did such fact prevent her said separate property occupying the position of a surety for the bank's debt or deprive her of the privilege of taking all necessary steps to protect her said separate property. In order to do this, under the well-established principles of law of both our state and federal courts, she had the right to have the partnership collateral held by the bank applied to the $18,317.60 partnership indebtedness to said bank, before so applying any part of her said separate property. The State National Bank of Terrell, on December 14, 1926, was holding said two policies, and the checks for $20,923, the proceeds of same, as well as the other collateral stated above, for the payment of its entire indebtedness against the bankrupts of $23,784.97, when appellee, Mrs. Perry, borrowed $23,784.97 from the First National Bank of Terrell, giving her personal note therefor, and with said money paid the entire indebtedness of $23,784.97 due the State National Bank; whereupon said last-named bank transferred to her the notes due it by the bankrupts aggregating said $23,784.97, together with the policies of insurance, and the checks representing the proceeds of same, as well as the other collateral held by it to secure its said indebtedness against the bankrupts.

There can be no doubt but that the money so borrowed by Mrs. Perry was her separate funds. The fact that it was borrowed by her is immaterial, and the fact that, as soon as she secured the release of the proceeds of the policies, she applied same as a credit on her note at the First National Bank for said borrowed money, is also immaterial, for this money was also her separate funds. In order to protect her said separate property, she had the right, with her separate means, to pay the $23,784.97 due the State National Bank, and have said indebtedness, together with the collateral held by said bank to secure same, assigned to her, and by so doing she was subrogated to all the rights of said bank in respect to said indebtedness and collateral securing same. The date of the filing of the creditors' petition to have the Terrell Motor Company, the partnership, and R. H. Moore, the surviving partner (L. C. Perry, the other partner, having died November 2, 1926), adjudged bankrupts, was filed November 13, 1926, and the adjudication therein was on December 29, 1926. Mrs. Perry paid the State National Bank's indebtedness and took an assignment of said indebtedness and all collateral securing same, as above stated, on December 14, 1926. Appellant contends the adjudication of a bankrupt vests in his trustee in bankruptcy, as of date of adjudication, all of the title of the bankrupt to his property, rights of possession and causes of action as they existed at the date of the filing of the creditors' petition under which the adjudication afterwards took place. The plain meaning of the several provisions of said statute is that the trustee of the estate, upon his qualification, is invested with the title of the bankrupt, as of the

date of the adjudication, and that the legal title remains in the bankrupt until the adjudication, but, during the interim between the date of the filing of the petition and the adjudication, no new lien can be acquired upon the property, nor can the bankrupt effect any valid transfer of the property, except possibly for full value, in the ordinary course of business. The Bankruptcy Act of 1898, § 70(a); 11 U. S. C. A. § 110(a); also, Collier on Bankruptcy (13th Ed.) vol. 2, § 70, pp. 1634–1641, §§ 70(a) and (c) under subdivision (2).

■■ But, as we view this case, the contention made here by appellant is of no importance. There is no contention by the trustee that the policies of insurance or the proceeds of same ever belonged to the bankrupts, or that said bankrupts ever had any interest in same, except in so far as said policies were held or pledged as security for the bankrupts' debt to the bank. Appellant is not claiming any rights in the proceeds of said policies, except to have same applied to the payment of the partnership debt to the bank and thereby release the partnership collateral, which he is seeking t) recover. Prior to December 14, 1926, the bankrupts were indebted to the bank in the sum of $23,784.97 and said bank held as collateral to secure same the two policies, the separate property of Mrs. Perry, and customers' notes to the amount of $5,000, and liens on five pieces of real estate; said notes and liens being the partnership property of the Terrell Motor Company. All of this collateral was being held by the bank to secure the entire $23,784.97. This was the status of the matter on November 13, 1926, at the time the petition in bankruptcy was filed. The title to the partnership property was in the partnership and the surviving partner, but the right of possession was in the bank until its debt was paid. On December 14, 1926, as above stated, Mrs. Perry, with her separate funds, took up the bank's indebtedness in full, and the bank transferred said indebtedness, together with all collateral held by it to secure same, to her. As a result of this, Mrs. Perry was subrogated to all the rights of the bank. No new debt or lien was created. The title to the partnership property was still in the partnership and its surviving partner, but the right of possession of the partnership collateral was in Mrs. Perry, and she had the same right, no more nor less, than the bank had formerly had to retain possession until the indebtedness assigned to her by the bank was satisfied.

The adjudication was had on December 29, 1926, and appellant, as trustee, on qualifying, succeeded only to the rights of the partnership, now the bankrupts, in the partnership property; that is, title to the customers' notes, and the liens against the five pieces of

real estate. If the adjudication had been while the bank held said collateral for its debt, evidently the trustee could not have recovered said collateral from the bank without paying or tendering payment of the bank's debt. Collier on Bankruptcy (13th Ed.) vol. 2, pp. 1530 to 1535, and authorities cited; also same volume, pp. 1660 and 1661, and cases cited. Mrs. Perry having succeeded to the same rights the bank had in said collateral, it necessarily follows the trustee was not entitled to recover same from her without paying or tendering payment of the indebtedness, to secure the payment of which, said collateral was pledged. The trustee failed to tender to Mrs. Perry anything—not even the $2,861.97 excess paid by her, over the amount she received from her insurance policies. If all the collateral involved had been turned over to the trustee by the bank, or by Mrs. Perry after it was assigned to her, and administered by the bankrupt court, Mrs. Perry would have had the right to intervene and require the partnership collateral to be applied to the $18,317 partnership debt before any part of the insurance, her separate property, was so applied, and, as the value of the partnership collateral was much less than the partnership debt, the estate would have profited nothing. The trial court found: "There existed no equity in the properties involved herein over and above the indebtedness by the copartnership to the State National Bank." This finding of the court is amply sustained by the evidence, and is in no way challenged by appellant. As we view the record, there is no theory of the case authorizing a recovery by appellant.

While we have not discussed all of appellant's contentions, we have considered all of them, and, finding no reversible error, the same are overruled.

The judgment of the trial court is affirmed.