

# THE ATTORNEY GENERAL

## OF TEXAS

**AUSTIN 11, TEXAS**

JOHN BEN SHEPPERD
ATTORNEY GENERAL

October 19, 1953

Hon. Robert S. Calvert          Opinion No. S-108
Comptroller of Public Accounts
Capitol Station                 Re:  Allowable inheritance tax
Austin, Texas                        exemption for proceeds of
                                     insurance policies assigned
                                     by decedent and surviving
                                     spouse as collateral for a
Dear Mr. Calvert:                    loan.

     In connection with your request for an opinion on the above-captioned subject you have supplied us with the following facts.

     The decedent and his surviving wife had assigned certain insurance policies on decedent's life to a bank as collateral for a loan. The wife was the beneficiary of these policies. All premiums had been paid out of community funds. The loan (constituting a community debt) was in the amount of $87,500.00. The face amount of the policies was $110,218.34.

     Subsequent to decedent's death the insurance companies made full payments to the surviving spouse, as beneficiary, and the bank, as assignee, jointly.

     In her inheritance tax report the executrix reported the decedent's community one-half of the proceeds of the policies ($55,109.17) and claimed as to said proceeds the $40,000.00 exemption allowed by Article 7117, Vernon's Civil Statutes. She also claimed one-half of the community debt ($43,750.00) as a deduction under schedule D of the report, which itemizes deductible debts due by the estate. Article 7125, V.C.S.

     You take the position that the decedent's one-half of the community indebtedness secured by the policies should be deducted from the one-half of the proceeds reported by the taxpayer before applying the $40,000.00 exemption and that said one-half of the community indebtedness cannot be claimed as a deduction under schedule D.

     In other words, in computing the inheritance tax, the

taxpayer claims to be entitled to the full amount of the insurance exemption and to a deduction of the entire amount of the decedent's one-half of the community debt under schedule D. You would deduct the amount of said debt from the reported insurance proceeds before applying the exemption, and not allow a further deduction for said debt under schedule D.

The pertinent provisions of Article 7117 are the following:

"All property within the jurisdiction of this State, . . . and any interest therein, . . . including the proceeds of life insurance to the extent of the amount receivable by the executor or administrator as insurance under policies taken out by the decedent upon his own life, and to the extent of the excess over Forty Thousand Dollars ($40,000) of the amount receivable by all other beneficiaries as insurance under policies taken out by the decedent upon his own life, . . . shall, upon passing . . . be subject to tax . . ."

Absent the loan in question, the taxpayer would indisputably be entitled to the full amount of the $40,000 exemption. Thus the question is whether the effect of the assignment was to destroy the exemption right to the extent of the amount of the obligation secured by the policies.

In re O'Meara's Estate, 81 N.Y.S.2d 388 (1948), dealt with the question here presented and held that the entire proceeds of a life insurance policy assigned as collateral for a loan are considered in determining the insurance exemption allowed under the New York statute and that the amount of a loan secured by the policy, being a valid claim against the true estate, is a proper deduction. In reaching this conclusion the court stated that the assignment of the policy did not divest the assignor of his general property in the policy but merely created a lien in favor of the assignee to the extent of the debt owed. The transaction between the decedent and the bank created a debt for which decedent was primarily liable, which obligation upon his death became a debt of his estate, and therefore a proper deduction. Under such circumstances in New York, the beneficiary may in certain instances be subrogated to the rights of the assignee and have a valid claim against the estate for the amount of the proceeds used to discharge the obligation. At page 391, the court said:

"The existence of such right of a designated beneficiary to recover from the estate, upon payment of the indebtedness secured by the policy, is

wholly inconsistent with the apparent contention
of the respondent that such portion of the proceeds
of the policy in question as are subject to the as-
signment is receivable by the executor and not by
the named beneficiary. While it has been held that
where, as here, the insured reserves the right to
change the beneficiary, the rights of an assignee
to whom the policy has been assigned for a valu-
able consideration are superior to those of the
named beneficiary, such holding is consistent with
a recognition of all of the rights of the beneficiary,
as against the estate. It follows, therefore, that al-
though the decedent's power to revoke the designa-
tion of his wife made her interest as designee in-
choate during his lifetime, such interest became
vested upon the occurrence of his death subject on-
ly to the lien of the assignee."

The New York cases which laid the predicate for
the decision in O'Meara's Estate, supra, have their Texas coun-
terpart in Ferracy v. Perry, 12 S.W.2d 651 (Tex.Civ.App. 1929,
error ref.). The facts in this case, so far as pertinent here, are
as follows. Suit was instituted against Mrs. Minnie E. Perry and
another by the trustee in bankruptcy of the estate of R. H. Moore,
individually, and of the Terrell Motor Company, a partnership
composed of R. H. Moore and L. C. Perry, then deceased. The
Terrell Motor Company owed a bank $18,317.60 and L. C. Perry
individually owed the same bank $5,467.37. Various customers'
notes and a deed of trust lien on certain realty (property of the
Terrell Motor Company) had been assigned to the bank to secure
the total indebtedness of $23,784.97. Also in 1925 and 1926, L.C.
Perry, joined by his wife, Minnie E. Perry, assigned to the bank
as collateral security two insurance policies on L. C. Perry's
life aggregating $25,000. Minnie E. Perry was designated as
beneficiary of each policy. L. C. Perry died November 2, 1926.
R. H. Moore, individually, and R. H. Moore as surviving partner
of the Terrell Motor Company were adjudged bankrupts on De-
cember 29, 1926, on an involuntary petition of the creditors filed
November 13, 1926.

After Perry's death on November 2, 1926, checks
totalling the amount of the policies were drawn by the insurance
company payable to the bank as assignee and to Minnie E. Perry,
beneficiary. On December 14, 1926, Minnie E. Perry secured a
loan in the amount of $23,784.97 from another bank. This sum

she then paid to the first mentioned bank, which assigned and transferred to her all of the notes and obligations of the Terrell Motor Company together with all collateral then held by it including the insurance policies.

The court stated at page 654 that on Mr. Perry's death title to said policies and the proceeds thereof vested in Mrs. Perry and became her separate property subject only to the rights of the bank. The policies, her separate property, occupied the position of a surety for the partnership obligation and the obligation against L. C. Perry's estate alone. The fact that the bank claimed the right to hold said policies as collateral security for the total amount of $23,784.97 did not change the fact that the policies and the proceeds thereof were her separate property or deprive her of the privilege of taking all necessary steps to protect that property. At page 654 the court said:

"The fact that it was borrowed by her is immaterial, and the fact that, as soon as she secured the release of the proceeds of the policies, she applied same as a credit on her note at the First National Bank for said borrowed money, is also immaterial, for this money was also her separate funds. In order to protect her said separate property, she had the right, with her separate means, to pay the $23,784.97 due the State National Bank, and have said indebtedness, together with the collateral held by said bank to secure same, assigned to her, and by so doing she was subrogated to all the rights of said bank in respect to said indebtedness and collateral securing same."

The adjudication of bankruptcy was made December 29, 1926. At page 655, the court said:

"If all the collateral involved had been turned over to the trustee by the bank, or by Mrs. Perry after it was assigned to her, and administered by the bankrupt court, Mrs. Perry would have had the right to intervene and require the partnership collateral to be applied to the $18,317 partnership debt before any part of the insurance, her separate property, was so applied, and, as the value of the partnership collateral was much less than the partnership debt, the estate would have profited nothing."

Applying the foregoing principles to the facts presented by your request we reach the following conclusions. Upon the

death of the decedent, the decedent's community one-half of the proceeds of the policies vested in his surviving wife, subject only to the rights of the bank. The one-half of the community debt secured by the policies should not be deducted from said proceeds before applying the $40,000.00 exemption. Said debt secured by the policies constitutes a claim against the estate and can therefore be claimed as a deduction under schedule D.

## SUMMARY

In computing inheritance taxes under submitted facts, the $40,000.00 exemption allowed by Article 7117, V.C.S., should be deducted from the entire amount of decedent's community one-half of the proceeds of life insurance policies payable to surviving spouse but previously assigned as collateral for a loan. One-half of the community debt secured by said policies should be allowed as a deduction under schedule D.

Yours very truly,

JOHN BEN SHEPPERD
Attorney General

By *Marietta McGregor Creel*
Marietta McGregor Creel
Assistant

MMC:mg

APPROVED:

W. V. Geppert
Taxation Division

J. C. Davis, Jr.
Reviewer

John Atchison
Reviewer

John Ben Shepperd
Attorney General