

# NUMBERS 13-23-00463-CV, 13-23-00465-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## IN THE INTEREST OF L.F.W.N. AND K.L.N., CHILDREN

## ON APPEAL FROM THE 197TH DISTRICT COURT
## OF CAMERON COUNTY, TEXAS

# MEMORANDUM OPINION

**Before Justices Benavides, Longoria, and Silva**
**Memorandum Opinion by Justice Benavides**

Appellant M.O. (Miranda)[1] appeals from the trial court's judgments related to the child support obligation she owes to appellee E.N. III (Ernest) for the support of their minor children, L.F.W.N. (Louis) and K.L.N. (Kayla). In appellate cause number 13-23-00465-CV, Miranda argues the trial court erred by: (1) sua sponte converting a temporary orders

---

[1] We refer to the parties and their children by pseudonyms. *See* Tex. Fam. Code Ann. § 109.002(d) ("On the motion of the parties or on the court's own motion, the appellate court in its opinion may identify the parties by fictitious names or by their initials only."); Tex. R. App. P. 9.8 cmt. ("The rule does not limit an appellate court's authority to disguise parties' identities in appropriate circumstances in other cases.").

hearing into a final hearing without providing adequate notice; (2) denying Miranda's request to modify child support; and (3) failing to file findings of fact and conclusions of law. In both appellate causes, Miranda argues that the trial court erred by denying her motion to disqualify Ernest's attorney. And in appellate cause number 13-23-00463-CV, Miranda contends the trial court erred by: (5) awarding child support arrears despite the motion to enforce containing insufficient information; (6) enforcing an ambiguous judgment; (7) failing to offset child support arrears; and (8) awarding attorney's fees based on insufficient evidence. We reverse and remand in appellate cause number 13-23-00465-CV, and we affirm in part and reverse and remand in part in appellate cause number 13-23-00463-CV.

## I.     PROCEDURAL HISTORY

According to the record, Miranda and Ernest divorced on October 23, 2013. The attendant orders concerning custody and child support have apparently been modified several times throughout the years, with the rendition of the penultimate order regarding the children having occurred on October 22, 2021.

On March 4, 2022, Miranda filed a petition to modify the parent-child relationship, specifically requesting a modification of the October 2021 order as it pertained to child support and asserting that her circumstances "have materially and substantially changed since" the October 2021 order. *See* TEX. FAM. CODE ANN. § 156.401(a)(1)(A). She later filed an amended petition also seeking to modify the custody orders, as she believed Louis "will express to the Court in chambers . . . the conservator the child prefers to have the exclusive right to designate the primary residence of the child." *See id.* §§ 153.009,

2

156.101(a)(2).

On May 26, 2022, Ernest filed an answer. On November 17, 2022, Miranda filed a motion to confer and request for temporary orders. Miranda requested that the trial court speak in chambers with Louis about his preferences and that the conversation be transcribed. Miranda also requested that the trial court temporarily modify the custody orders to appoint Miranda as the parent with the "exclusive right to designate the residence of" Louis. Miranda's request for temporary orders did not mention child support. The trial court ultimately granted Miranda's motion to confer, but as to both Louis and Kayla, rather than just Louis. The court reporter transcribed this conference.

On January 9, 2023, Ernest filed his motion to enforce the child support orders and a motion for contempt, alleging that Miranda violated the court's October 2021 order by failing: (1) "to pay child support in the amount [of] $1,039.00 per month since September 1, 2021 till the present in the amount of $17,633.00" and (2) "to provide health insurance for the minor children." Ernest's motion alleged that, "based on the repeated past violations of the Court's order," he believed that Miranda "will continue to fail to comply with the order." As relief, Ernest sought a judgment on the delinquent child support and that Miranda "be held in contempt, jailed for up to 180 days, and fined up to $500." Ernest filed an amended motion on February 23, 2023, that was not substantively different from his initial motion.[2]

That same day, Miranda filed a motion to disqualify Ernest's attorney, arguing that the attorney "is related to the children and is a fact witness." Miranda further argued that

---

[2] The only discernable difference between his initial motion and his live pleading is the listed location of where Miranda should be served.

3

Ernest's attorney had personal knowledge of an incident that occurred during the 2022 holiday season.

On February 24, 2023, the trial court began the first of four hearings in this case. The court explained that the anticipated subject-matter of the hearing involved "a motion for contempt and . . . a motion for temporary orders wherein the movant is attempting to modify on a temporary basis the current arrangement for the children." However, due to "a rush of motions" filed by the parties the day before, the court agreed to hear Miranda's motion to disqualify Ernest's counsel but recess the motion for contempt.

Counsel for Miranda argued that Ernest's attorney had knowledge of an essential fact, specifically, that "the children don't live in a stable home" and had to stay with Ernest's attorney on occasion. Counsel for Miranda also represented that Ernest's attorney was the children's uncle. Ernest's attorney responded that he believed "it would be a huge mistake" to call him as a witness and that he did not "know anything that's contrary to [his] client." The trial court suggested that Miranda's attorney was "the johnny-come-lately . . . to a certain extent," as Ernest's attorney had been representing Ernest "for years in the litigation of this case," and that it came out in the prior modification proceeding "that the kids had stayed with" Ernest's attorney on prior occasions.

The court ultimately denied Miranda's motion to disqualify but ruled that Miranda could call Ernest's attorney as a witness if she so desired. It then proceeded on Miranda's request for temporary orders. Counsel for Miranda announced "present and ready for our motion to modify." The Court later clarified, "Just so we can be perfectly clear, we're going to proceed on the motion for temporary orders today only." The trial court briefly heard

4

testimony, and then continued the hearing to a later date at the request of both parties.

On March 23, 2023, the trial court picked up where it left off. At the conclusion of that hearing, the following exchange occurred:

| | |
|---|---|
| [Counsel for Miranda]: | At this time, Your Honor, . . . I don't know if you also wanted to hear the child support stuff. I can try and briefly go over that with my client, because I just wanted to concentrate on the custody part, and, then, the child support part, which is way more straightforward, if that's okay with you. |
| THE COURT: | So right now, you don't have any more witnesses in regards to this motion to modify? |
| [Counsel for Miranda]: | The custody, yes, Your Honor. |
| . . . . | |
| THE COURT: | So, you—so you rest? |
| [Counsel for Miranda]: | Well, not technically. I would like to put on my evidence as to child support now, and then I can rest, because it's also—I just don't know if you want to do that later or you want to hear that now. |
| THE COURT: | Are you talking about [the] motion for contempt for the child support, or what? |
| [Counsel for Miranda]: | No. He filed, also, in addition to—our original modification was as to child support, and we still haven't gotten any relief regarding that. I don't know if you want to hear that— |
| THE COURT: | The original motion? I'm sorry. |
| [Counsel for Miranda]: | Our original petition, when we filed this last year, was to modify child support. |

5

|  |  |
|---|---|
|  | That was our original petition. |
| THE COURT: | Right. |
| [Counsel for Miranda]: | We, subsequently, amended it to as per custody of [Louis]. |
| THE COURT: | Right. |
| [Counsel for Miranda]: | So, I don't know—as with respect to my case for custody, I—I feel I put on my case. With respect to child support, I feel I need to just fl[e]sh out some things. If you would like to make that ruling at this time, or, obviously, we can save it for closing—for—for the end of the whole thing. I don't know how you would like to proceed. |
| THE COURT: | [Ernest's counsel]? What's your position on it? |
| [Counsel for Ernest]: | However the Court wants to proceed, Judge. I think we brought out most of the information about child support that you would want to hear. . . . What I think she—she originally filed was a motion to lower the child support. |
| THE COURT: | Right. I believe that's what she's talking about. |
| [Counsel for Miranda]: | Yes. |
| . . . . |  |
| THE COURT: | All right. |
|  | . . . . |
|  | Call your next witness. |
|  | . . . . |

6

|  | You're still under oath. So I guess this is going to be offered for the limited purpose of trying to modify the original child support orders, I guess. |
|---|---|
| [Counsel for Miranda]: | That's correct. This is to modify child support. |

At the conclusion of this hearing, the trial court again continued the hearing to a later date. Miranda's attorney asked, "And at that time, will you be giving a ruling as to our request?" The trial judge responded that he would "like to defer any findings until [he] hear[d] . . . the entire case."

On March 23, 2023, the trial court signed an "**<u>ORDER SETTING FINAL HEARING</u>**," notifying the parties that "the Temporary Orders hearing, Motion for Enforcement and Modification of Child Support" would resume on March 30, 2023. However, on March 29, 2023, the trial court signed an order resetting the hearing to April 20, 2023. This reset order did not include any language indicating the hearing would be a final hearing.

On April 20, 2023, the trial court resumed its hearing. Miranda represented to the court that "we're set here for temporary orders on our motion to modify child support." The trial court responded, "That was—we had already kind of rested on that one. We're strictly concentrating on the motion to reduce." Miranda agreed, "Right." At the conclusion of this hearing, the trial court ordered Miranda to pay a lump-sum of $5,000 in "temporary child support" and reset the hearing.

On May 25, 2023, the hearing resumed. At the top of the hearing, the court relayed that at the April 20, 2023 hearing, it "concluded evidence on temporary orders on

the . . . temporary request for modification of temporary custody of the children. And the Court started petitioner's request to modify the child support." The trial court discussed with Miranda's attorney the lack of a specific pleading regarding a temporary reduction of child support. Miranda's attorney agreed that she did not specifically plead for temporary child support; however, she represented that the court had the "power, discretion, to order orders regarding all matters on temporary orders for conservatorship, visitation, and child support." After discussing the matter further, the following colloquy occurred:

| THE COURT: | The only thing we really have left is the money issues. |
| --- | --- |
| [Ernest's counsel]: | The money issues. |
| THE COURT: | I.e., the motion to reduce and/or the contempt. |
| [Miranda's counsel]: | Correct. |
| THE COURT: | And that shouldn't take too long. |
| . . . . | |
| [Miranda's counsel]: | So these are temporary orders, so it's just temporary. It's not a final order. |
| THE COURT: | I know. What I'd like to do is—let's get rid of the evidence. And I'll send it to mediation, if you want to, at the end after we conclude your evidence. And, then, if you are able to mediate—I won't make a decision today. And if at the end y'all reach an agreement, without the Court's—you know, amongst yourselves, well, I'll—I'll hear it out. And if it's—if it's satisfactory with the parties, it will be satisfactory to me. |

However, at the conclusion of the hearing, the court stated, "Obviously, I'm not going to

grant the motion to . . . reduce at this time. Okay? That will be denied. So I'm going to render judgment, court costs. I'm going to render attorney's fees of $4,000." The court also granted Ernest's motion to enforce and motion for contempt. The court further ordered that the entirety of Miranda's child support arrearages—$23,698—were to be paid within thirty days of its order.

In response to the court's ruling on her petition to modify, Miranda's counsel argued, "But we're not set for final hearing. This is not a final hearing." The Court responded, "No. There was no—you have filed no motion for temporary—to modify temporary child support." Miranda's counsel reiterated that she believed the purpose of the hearing was solely to "temporarily" deal with the issue of child support. Ultimately, the hearing concluded with the parties agreeing to go to mediation on the remaining issues affecting custody.

On September 18, 2023, the trial court signed an order denying Miranda's petition to modify the parent-child relationship solely as it pertained to child support. It also signed its enforcement order that same day. On October 24, 2023, Miranda filed a notice of nonsuit, which disposed of the remaining issues, and rendered the trial court's judgments final. These appeals followed.

## II.     MODIFICATION OF CHILD SUPPORT–NOTICE OF FINAL HEARING

By her first issue, Miranda contends that the trial court provided insufficient notice of the final hearing.

### A.     Applicable Law & Standard of Review

"The Court may set contested cases on written request of any party, or on the

9

court's own motion, with reasonable notice of not less than forty-five days to the parties of a first setting for trial, or by agreement of the parties . . . ." TEX. R. CIV. P. 245. "[A] lack of notice violates basic principles of due process." *Highsmith v. Highsmith*, 587 S.W.3d 771, 778 (Tex. 2019) (per curiam). However, "the law presumes that a trial court will hear a case only after proper notice to the parties." *Delgado v. Hernandez*, 951 S.W.2d 97, 99 (Tex. App.—Corpus Christi–Edinburg 1997, no writ). "Thus, a party challenging a trial court[']s judgment for lack of notice has the burden of proving there was no notice." *Carter v. Carter*, 225 S.W.3d 649, 651 (Tex. App.—El Paso 2006, no pet.); *see In re Marriage of Rodriquez*, 149 S.W.3d 858, 859 (Tex. App.—Amarillo 2004, no pet.) (per curiam). Further "[t]o preserve a complaint about non-compliance with the notice requirement of Rule 245, a party must object to the untimely notice." *Abend v. Fed. Nat'l Mortg. Ass'n*, 466 S.W.3d 884, 886 (Tex. App.—Houston [14th Dist.] 2015, no pet.); *see Padilla v. Comm'n for Law. Discipline*, 87 S.W.3d 624, 626 (Tex. App.—San Antonio 2002, pet. denied); *In re Marriage of Parker*, 20 S.W.3d 812, 818 (Tex. App.—Texarkana 2000, no pet.). A hearing that is dispositive of a case is effectively a trial setting, even if it is not noticed as such. *LBL Oil Co. v. Int'l Power Servs., Inc.*, 777 S.W.2d 390, 391 (Tex. 1989).

## B.     Analysis

Throughout the trial court proceedings there were certain indicators that the continued hearing could result in a final judgment. For instance, the trial court's order setting a final hearing specifically differentiated between Miranda's request for temporary orders and her motion to modify child support. At the beginning of the April 20, 2023 hearing, Miranda's counsel represented that "we're here set for temporary orders on our

10

motion to modify child support," and the court responded, "That was—we had already kind of rested on that one. We're strictly concentrating on the motion to reduce." Miranda's counsel nonetheless replied, "Right."

But Miranda continued to assert at each hearing her understanding that any orders resulting from the hearings would be temporary orders only. And when it mattered most, i.e., at the May 25, 2023 hearing, the trial court assuaged Miranda's counsel's fears and agreed that the hearing was not a final determination on the merits of her petition. That day, the trial court confirmed that it "kn[e]w" the hearing was a temporary orders hearing, not a final hearing, that it would allow the parties to mediate, and that it would not make a final decision that day. Miranda was not unreasonable for believing that the trial court would not issue a final ruling that day on her request to modify child support. But, over her objection, the trial court did just that. "The due process requirement of notice must be provided 'at a meaningful time and in a meaningful manner.'" *In re K.M.L.*, 443 S.W.3d 101, 119–20 (Tex. 2014) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). Surprising Miranda with a final ruling on the merits of her petition to modify child support, when it had just assured her that such an outcome was not in the cards, does not satisfy the requirement that notice must be provided "at a meaningful time and in a meaningful manner."[3] *See id.* (quoting *Mathews*, 424 U.S. at 333); *Union Carbide Corp. v. Moye*, 798 S.W.2d 792, 793 (Tex. 1990); *see also In re Marriage of Hughes*, No. 07-08-0292-CV,

---

[3] Nonetheless, we are sympathetic to the trial judge's position. In our review of the record, he appeared to be understandably frustrated by the length of time this case lingered with no resolution. Our ruling should in no way be construed as obligating the trial court to conduct further temporary orders hearings in this matter. Additionally, if Miranda fails to timely request a final hearing, certainly nothing in our holding prevents the trial court from dismissing this cause for want of prosecution. *See* TEX. R. CIV. P. 165a.

11

2009 WL 1491866, at *3 (Tex. App.—Amarillo May 29, 2009, no pet.) (mem. op.).

"[T]he remedy for a denial of due process is due process." *Mosley v. Tex. Health & Hum. Servs. Comm'n*, 593 S.W.3d 250, 268 (Tex. 2019) (quoting *Univ. of Tex. Med. Sch. at Hous. v. Than*, 901 S.W.2d 926, 933 (Tex. 1995)). Accordingly, we remand to the trial court to afford Miranda an opportunity to be fully heard on her petition to modify child support. *See id.* at 254; *see also In re I.A.B.N.*, No. 01-22-00306-CV, 2022 WL 4540813, at *8–9, (Tex. App.—Houston [1st Dist.] Sept. 29, 2022, no pet.) (mem. op.) (concluding that the trial court should not have granted an order terminating Father's parental rights after "repeatedly stating during the . . . hearing that it was only hearing evidence on the question of whether Father should be granted supervised visitation"); *In re Marriage of Hughes*, 2009 WL 1491866, at *3. We sustain Miranda's second issue.[4]

### III.    DISQUALIFICATION

We next address whether the trial court erred by failing to grant Miranda's motion to disqualify Ernest's attorney in both matters.

### A.    Applicable Law & Standard of Review

"Disqualification is a severe remedy." *In re Nitla S.A. de C.V.*, 92 S.W.3d 419, 422 (Tex. 2002) (orig. proceeding) (per curiam) (quoting *Spears v. Fourth Ct. of Appeals*, 797

---

[4] Because her second and third issues would not provide her with any additional relief, we need not address whether the trial court erred by failing to: (1) modify child support; and (2) file findings of fact and conclusions of law. *See* TEX. R. APP. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal."); *cf. In re A.A.T.*, 583 S.W.3d 914, 924–25 (Tex. App.—El Paso 2019, no pet.) ("We therefore conclude that the trial court abused its discretion in denying Tellez's motion to modify the prior child support order, but given the inherently fact-finding nature of child support issues, we will reverse and remand to the trial court for further proceedings consistent with our opinion."); *Tucker v. Tucker*, 908 S.W.2d 530, 535 (Tex. App.—San Antonio 1995, writ denied) (reversing and remanding despite holding that "appellant has conclusively established a substantial and material change in circumstances to warrant a reduction in child support" because of "the inherently fact-finding nature of child support issues").

12

S.W.2d 654, 656 (Tex. 1990)). "In considering a motion to disqualify, the trial court must strictly adhere to an exacting standard to discourage a party from using the motion as a dilatory trial tactic." *Id.* (citing *Spears*, 797 S.W.2d at 656). "The fact that a lawyer serves as both an advocate and a witness does not in itself compel disqualification." *In re Sanders*, 153 S.W.3d 54, 57 (Tex. 2004) (orig. proceeding). "Disqualification is only appropriate if the lawyer's testimony is 'necessary to establish an essential fact.'" *Id.* (quoting TEX. DISCIPLINARY RULES PROF'L CONDUCT 3.08(a)). Consequently, if "other sources revealed in the record" could be used to establish that essential fact instead of the attorney's testimony, a trial court does not abuse its discretion by declining to disqualify an attorney on this basis. *Id.* at 57. Further, although we often look "to our disciplinary rules to decide disqualification issues[,] . . . the disciplinary rules are merely guidelines—not necessarily controlling standards—for such motions." *In re Meador*, 968 S.W.2d 346, 350 (Tex. 1998) (orig. proceeding). "Rule 3.08 'should rarely be the basis for disqualification.'" *In re Chu*, 134 S.W.3d 459, 464 (Tex. App.—Waco 2004, orig. proceeding) (quoting *May v. Crofts*, 868 S.W.2d 397, 399 (Tex. App.—Texarkana 1993, orig. proceeding)).

## B.  Analysis

"Because she has sought disqualification," Miranda "bears the burden of showing that" Ernest's attorney's "testimony is necessary" to establish a material fact. *See In re Sanders*, 153 S.W.3d at 57. Miranda has wholly failed to make such a showing here. Miranda argues that Ernest's attorney's testimony was necessary to establish facts concerning the children's wishes as it relates to custody and the instability of Ernest's

13

home, as the children were reportedly kicked out of their home and Ernest's attorney took care of them. But Miranda non-suited her request to modify custody and has not sought any relief related to that non-suit. Miranda does not argue that Ernest's attorney had any knowledge that was directly applicable to the motion to enforce or petition to modify child-support, and the orders resulting from those pleadings are the only ones we have been asked to review. *See San Jacinto River Auth. v. Duke*, 783 S.W.2d 209, 210 (Tex. 1990) ("A court of appeals may not reverse a trial court's judgment in the absence of properly assigned error."). Additionally, both children spoke to the trial court at length about their stated desires, and a record of that conversation was made. *See In re Sanders*, 153 S.W.3d at 57. Finally, Miranda called the woman with whom Ernest and the children lived, who testified about the incident that led to the children being kicked out of the house. There were also other adult family members that were referenced in this woman's testimony—e.g., the children's paternal grandfather—that seemed to have knowledge about this specific incident. Accordingly, it is unclear what facts only Ernest's attorney would be able to testify to. *See id.*

Because Miranda has failed to show that Ernest's attorney's testimony was necessary to establish an essential fact, we overrule Miranda's fourth issue. *See id.*

## IV. CHILD SUPPORT ENFORCEMENT–NOTICE

By her fifth issue, Miranda argues that Ernest's motion to enforce did not contain sufficient information.

A motion for enforcement must, in ordinary and concise language:

(1)     identify the provision of the order allegedly violated and sought to be enforced;

14

(2)     state the manner of the respondent's alleged noncompliance;

(3)     state the relief requested by the movant; and

(4)     contain the signature of the movant or the movant's attorney.

TEX. FAM. CODE ANN. § 157.002(a). For motions to enforce child support specifically, the motion "must include the amount owed as provided in the order, the amount paid, and the amount of arrearages." *Id.* § 157.002(b).

We agree that Ernest's motion did not comply perfectly with § 157.002. *See id.* § 157.002. However, "[e]very defect, omission or fault in a pleading either of form or of substance, which is not specifically pointed out by exception in writing and brought to the attention of the judge . . . before the judgment is signed, shall be deemed to have been waived by the party seeking reversal on such account." TEX. R. CIV. P. 90; *see In re Marriage of Pyrtle*, 433 S.W.3d 152, 162 (Tex. App.—Dallas 2014, pet. denied). Here, Miranda did not file any special exceptions, and she did not object to the sufficiency of Ernest's motion until weeks after he began presenting evidence on the motion. Accordingly, this issue was waived. *See* TEX. R. CIV. P. 90; *In re B.G.B.*, 580 S.W.3d 310, 319–20 (Tex. App.—Tyler 2019, no pet.); *Ex parte Occhipenti*, 796 S.W.2d 805, 810 (Tex. App.—Houston [1st Dist.] 1990, no writ); *see also Campos v. Russell*, No. 03-00-00395-CV, 2001 WL 660687, at *1 (Tex. App.—Austin June 14, 2001, no pet.) (mem. op.) ("In child-support enforcement proceedings, as in other civil proceedings, special exceptions must be made in the district court to allow the movant the chance to replead.").

Further, to the extent that Miranda brought her objections to the trial court's attention prior to its judgment, she only objected on the basis that Ernest's motion

15

"failed . . . to list th[e] specific dates, the specific amount, the amount that she was supposed to pay, and what's owed." Ernest's motion did list the specific amount she was required to pay per the prior court order; $1,039.00 per month. He also alleged that, at the time of filing, Miranda owed $21,315.91 in child support arrears, and that he anticipated future violations of a similar nature would occur. *See* TEX. FAM. CODE ANN. § 157.002(e) ("The movant may allege repeated past violations of the order and that future violations of a similar nature may occur before the date of the hearing."). Accordingly, Ernest adequately notified Miranda of the specific amount she was required to pay under the October 2021 order and the amount owed.

Finally, the requirement that a motion to enforce list the individual dates of noncompliance is specific to contempt proceedings. *See id.* § 157.002(b)(2). But this case is before us on direct appeal. "Contempt orders are not reviewable by appeal." *In re Roisman*, 651 S.W.3d 419, 433 (Tex. App.—Houston [1st Dist.] 2022, orig. proceeding). "This is true even when, as here, the contempt order is appealed along with a judgment that is appealable." *Id.* Rather, contempt orders "are reviewed only by petition for writ of mandamus or habeas corpus." *Id.* Accordingly, to the extent that Miranda complains of the lack of notice as it pertains to matters specifically related to the trial court's finding of contempt, we have no jurisdiction to review that portion of the order. *See id.*

We overrule Miranda's fifth issue.

## V. CHILD SUPPORT ENFORCEMENT–AMBIGUITY

By her sixth issue, Miranda argues that the trial court had no authority to enforce its October 2021 judgment, as some of its provisions were ambiguous.

16

**A.      Standard of Review & Applicable Law**

"The same rules of interpretation apply in ascertaining the meaning of judgments as in ascertaining the meaning of other written instruments." *State Farm Lloyds, Inc. v. Williams*, 791 S.W.2d 542, 546 (Tex. App.—Dallas 1990, writ denied). Whether an order is ambiguous is a question of law that we review de novo. *Shanks v. Treadway*, 110 S.W.3d 444, 447 (Tex. 2003). To be enforceable, "a child support obligation must be 'sufficiently definite and certain.'" *Office of Att'y Gen. of Tex. v. Wilson*, 24 S.W.3d 902, 905–06 (Tex. App.—Dallas 2000, no pet.) (quoting *Villanueva v. Office of the Atty. Gen.*, 935 S.W.2d 953, 955 (Tex. App.—San Antonio 1996, writ denied)). When an order's terms are unable to be readily understood, such an ambiguity "renders it unenforceable." *Ex parte Slavin*, 412 S.W.2d 43, 45 (Tex. 1967) (orig. proceeding).

**B.      Analysis**

The trial court's enforcement order provides that Miranda violated the following provision of the October 22, 2021 order:

> IT IS ORDERED that [Miranda] is obligat[ed] to continue to pay [Ernest] child support of $1,039.00 per month as previously ordered on September 1, 2021. [Miranda's] requests to change the amount [are] hereby denied. Child support payments will continue to be payable on the 1[st] day of each month without disruption and a like payment being due and payable on the 1[st] day of each month thereafter, until the first month following the date of the earliest occurrence of one of the events specified below.

Miranda contends the October 22, 2021 order is ambiguous because: (1) its reference to September 1, 2021 is confusing; (2) the order does not explicitly state that her child support obligation will terminate upon the occurrence of certain events; and (3) the order does not contain customary "step-down" language.

17

First, we disagree that the reference to September 1, 2021, renders this provision ambiguous. From reading this provision as a whole, it is apparent that Miranda's child support obligation in the amount of $1,039.00 was initially imposed on September 1, 2021. The trial court's October 22, 2021 order clearly contemplates that Miranda's child support obligation began on "September 1, 2021" and would "continue to be payable on the 1[st] day of each month without disruption." If a written instrument is so worded that it can be given a definite or certain legal meaning, then it is not ambiguous. *Kachina Pipeline Co. v. Lillis*, 471 S.W.3d 445, 450 (Tex. 2015). Here, the plain meaning of the trial court's order is that Miranda was obligated to pay $1,039.00 on the first of each month every month beginning on September 1, 2021. Accordingly, this provision is not ambiguous. *See id.*

Second, the other two provisions that Miranda challenges are not properly before us. Attached to Miranda's brief, but appearing nowhere in the appellate record, is the October 22, 2021 order in its entirety.[5] "A trial court may sua sponte take judicial notice of its own records of a former trial in the same case. . . . " *Brown v. Brown*, 236 S.W.3d 343, 349 (Tex. App.—Houston [1st Dist.] 2007, no pet.). Indeed, we presume a trial court takes judicial notice of its own file even if "the trial court was not asked" to take judicial notice "and did not formally announce that it had done so." *Vahlsing, Inc. v. Mo. Pac. R. Co.*, 563 S.W.2d 669, 674 (Tex. App.—Corpus Christi–Edinburg 1978, no writ); *see Marble Slab Creamery, Inc. v. Wesic, Inc.*, 823 S.W.2d 436, 439 (Tex. App.—Houston [14th Dist.] 1992, no writ). "We, however, may not take judicial notice of those records

---

[5] The portions of the October 2021 order that we review stem from the trial court's order finding Miranda violated said order.

18

unless they are provided as part of the appellate record." *Brown*, 236 S.W.3d at 349. The appellate record consists of the clerk's record and, if necessary, the reporter's record. TEX. R. APP. P. 34.1. "It is well established that documents attached to an appellate brief which are not part of the record may generally not be considered by the appellate court." *Robb v. Horizon Cmtys. Improvement Ass'n*, 417 S.W.3d 585, 589 (Tex. App.—El Paso 2013, no pet.). Accordingly, because the trial court's October 22, 2021 order is not a part of the appellate record, it would not be appropriate for us to pass on these issues. *See id.*; *Tex. Windstorm Ins. Ass'n v. Jones*, 512 S.W.3d 545, 552 (Tex. App.—Houston [1st Dist.] 2016, no pet.) ("[A]n appellate court may not take judicial notice of records unless they are provided as part of the appellate record.").

Nonetheless, even assuming arguendo these provisions are properly before us, neither of them renders the trial court's child support order ambiguous. Miranda suggests that most child support orders contain customary language that when one child comes of age, the obligor's amount of child support will lower automatically. But an order is only "ambiguous if it is legitimately 'susceptible of more than one reasonable interpretation.'" *Estate of Hoskins*, 501 S.W.3d 295, 302 (Tex. App.—Corpus Christi–Edinburg 2016, no pet.). Miranda does not explain how the absence of this language leaves the court's order open to multiple interpretations. *See id.* Further, it would be inappropriate for us to resort to extrinsic evidence like Miranda's representation of what is ordinary for child support orders to determine whether an ambiguity exists. *See Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995).

Finally, Miranda does not suggest that she was legitimately confused as to whether

19

these provisions affected her obligation to pay child support. Accordingly, even if these provisions were ambiguous, it would not excuse Miranda's failure to comply with the trial court's order. *See Mendez v. Att'y Gen. of Tex.*, 761 S.W.2d 519, 521–22 (Tex. App.—Corpus Christi–Edinburg 1988, no writ).

We overrule Miranda's sixth issue.

## VI. CHILD SUPPORT ENFORCEMENT—CREDIT OR OFFSET

By her seventh issue, Miranda contends that the trial court abused its discretion by failing to offset her arrearages by the amount she paid to her son Louis directly.

Several screenshots from Cash App were admitted into evidence and demonstrated that Miranda made several direct payments to her son, Louis, in increments of between $4 and $35. Miranda testified that she gave her son "around $4,700 total," although the receipts in evidence only total around $325. Miranda argues that the trial court should have offset the total amount of arrearages it confirmed—$23,686.18—by the amount she paid directly to Louis.

A parent who owes the duty of child support "must diligently satisfy it." *Off. of Att'y Gen. of Tex. v. Scholer*, 403 S.W.3d 859, 866–67 (Tex. 2013). In an enforcement action, "[a]n obligor who has provided actual support to the child . . . may request reimbursement for that support as a counterclaim or offset against the claim of the obligee." TEX. FAM. CODE ANN. § 157.008(d). But when an obligor makes payments in a manner not contemplated by the support order, "[t]he court may determine that the payments did not contribute to the satisfaction of the obligor's child-support obligation, or it could conclude that the obligor has satisfied h[er] duty." *Ochsner v. Ochsner*, 517 S.W.3d 717, 724 (Tex.

20

2016). Either way, this is a matter wholly within the trial court's discretion. *Id.*; *see* TEX. FAM. CODE ANN. § 157.263(b-3) (providing that when confirming the total amount of child support arrearages, a trial court "*may* allow a counterclaim or offset as provided by this title" (emphasis added)); TEX. GOV'T CODE ANN. § 311.016 ("'May' creates discretionary authority or grants permission or a power.").

The trial court may have concluded that allowing Miranda's child support obligation to be satisfied by providing her teenage son with unfettered access to hundreds of dollars was not in his best interest. *See Williams v. Patton*, 821 S.W.2d 141, 144 (Tex. 1991) (explaining that the family code indicates "that the legislature intended that the court closely supervise child support proceedings to guarantee that the best interest of the child is always considered"). Further, the trial court specifically noted that it felt "bothered" that Miranda made direct payments to Louis without letting Ernest know, as it worried the payments were akin to "buying a witness." As there is support in the record for the trial court's decision to refuse to offset Miranda's child support arrearages by the amount she paid to Louis directly, we conclude that the trial court did not abuse its discretion by failing to do so. *See* TEX. FAM. CODE ANN. § 157.263(b-3); *Ochsner*, 517 S.W.3d at 724. We overrule Miranda's seventh issue.

## VII. CHILD SUPPORT ENFORCEMENT–ATTORNEY'S FEES

By her final issue, Miranda contends the trial court erred by awarding $4,000 in attorney's fees.

### A. Standard of Review & Applicable Law

"If the court finds that the respondent has failed to make child support payments,

21

the court shall order the respondent to pay the movant's reasonable attorney's fees and all court costs in addition to the arrearages." Tex. Fam. Code Ann. § 157.167(a). "Generally, we review a trial court's decision to award attorney's fees for an abuse of discretion." *Russell v. Russell*, 478 S.W.3d 36, 47 (Tex. App.—Houston [14th Dist.] 2015, no pet.).

"[T]he fact finder's starting point for calculating an attorney's fee award is determining the reasonable hours worked multiplied by a reasonable hourly rate, and the fee claimant bears the burden of providing sufficient evidence on both counts." *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 498 (Tex. 2019). "Sufficient evidence includes, at a minimum, evidence of (1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonably hourly rate for each person performing such services." *Id.* Generalities about "an attorney's experience, the total amount of fees, and the reasonableness of the fees . . . . are not sufficient to support a fee-shifting award under the lodestar method." *Id.* at 496.

**B.    Analysis**

Ernest's attorney testified that he had "been practicing since 1992," that he "practiced family law," and had "done motions like this before." He testified that "reasonable and necessary attorney's fees to bring a motion to . . . enforce child support . . . is [$]4,000." On cross-examination, Ernest's attorney estimated that he spent about "[a]n hour" preparing the motion to enforce. He explained that he did not have an hourly rate, but "[f]or a case like this," he usually charged a flat fee of $5,000. Ernest's

22

attorney testified that if he "did bill by the hour, [he] would probably charge at least [$]200." He also testified that he had "spent at least 20 hours" on this matter, "[p]reparing, talking to clients [sic], traveling back and forth, [and] listening to [Miranda's attorney]." He specified that "[i]t seem[ed] like" he had "talked to [Miranda's attorney] for 20 hours."

These generalities are not sufficient to support an award of attorney's fees. *See id.* Ernest's attorney did not testify when these services were performed, how much time he spent on each task, whether the amount of time spent on these services was reasonable, or why $200 per hour was a reasonable rate for these services. *See id.*; *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 763 (Tex. 2012). Nor did Ernest's attorney present any time records. *See El Apple I*, 370 S.W.3d at 763. Although Ernest's attorney testified that he customarily charged a flat rate of $5,000 for this type of case, he was still required to show why the amount sought was reasonable and necessary in light of the time and effort he spent on this specific case. *See Rohrmoos Venture*, 578 S.W.3d at 498 ("[T]he lodestar calculation should produce an objective figure that approximates the fee that the attorney would have received had he or she properly billed a paying client by the hour in a similar case."). In his testimony, besides the hour he spent on drafting the motion to enforce, Ernest's attorney did not segregate the time he spent on the enforcement action from the time he spent on the modification proceeding. *See Horizon Health Corp. v. Acadia Healthcare Co.*, 520 S.W.3d 848, 884 (Tex. 2017). Accordingly, we agree that the trial court abused its discretion by ordering Miranda to pay $4,000 in attorney's fees. *See id.*; *Rohrmoos Venture*, 578 S.W.3d at 496; *El Apple I*, 370 S.W.3d at 763. We sustain Miranda's final issue.

## VIII. CONCLUSION

In appellate cause number 13-23-00465-CV, we reverse and remand for further proceedings consistent with this memorandum opinion. In appellate cause number 13-23-00463-CV, we affirm the trial court's judgment in part, and we reverse and remand in part for the trial court to reconsider the proper amount of attorney's fees to award. *See Long v. Griffin*, 442 S.W.3d 253, 256 (Tex. 2014) (per curiam).

GINA M. BENAVIDES
Justice

Delivered and filed on the
18th day of July, 2024.